STATE of Wisconsin, Plaintiff-Respondent,

v.

Quinn J. RILEY, Defendant-Appellant.†

Court of Appeals

*No. 91-1181-CR. Submitted on briefs November 6, 1991.—Decided December 6, 1991.*

(Also reported in 479 N.W.2d 234.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Ruth A. Bachman,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Quinn Riley appeals from a judgment convicting him of delivery of cocaine and possession of drugs without paying the requisite drug tax. The issue is whether the nonpayment and penalty tax assessed against Riley by the Wisconsin Department of Revenue under sec. 139.95, Stats.,[1] for possession of controlled

---

[1]Section 139.95, Stats., the "Tax-Stamp" Act, requires dealers of otherwise controlled substances to pay an occupational tax. The statute provides:

> There is imposed on dealers, upon acquisition or possession by them in this state, an occupational tax at the following rates:
>
> . . ..
> (2) Per gram or part of a gram of other controlled substances, whether pure or impure, measured when in the dealer's possession, $200. Sec. 139.88, Stats.

---

substances was punishment within the meaning of the double jeopardy clauses of the United States and Wisconsin constitutions. We conclude that it was not and affirm the judgment.

Riley pled guilty to both counts. Between the plea hearing and sentencing, the department notified him that he owed taxes, interest and a penalty based on his possession of the cocaine. He was taxed at a rate of $200 per gram on 217 grams for a total of $43,600. He was also notified that he owed $2,616 in interest and a $43,600 penalty, for a total of $89,816.

Riley was sentenced to five years in jail on the delivery charge and placed on probation for fifteen years for failing to pay the drug tax. Riley moved the court for reconsideration arguing that he had been twice punished for the same crime. The trial court denied the motion and this appeal followed.

A criminal defendant is protected against being twice placed in jeopardy for the same offense under both the United States and Wisconsin constitutions.[2] The double jeopardy clause embodies three protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same

---

In addition, the department is authorized to impose a "penalty" equal to the unpaid tax on individuals who violate the law. There are also criminal sanctions for failure to pay the tax.

[2]The double jeopardy clause of the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. Amdt. 5. Article I, sec. 8 of the Wisconsin Constitution states: "[N]o person for the same offense may be put twice in jeopardy of punishment."

⟨ offense." *Grady v. Corbin,* 110 S. Ct. 2084, 2090 (1990) (citation omitted).

Whether an individual has been placed in jeopardy twice for the same offense is a question of law and we give no deference to the trial court's decision. *State v. Harris,* 161 Wis. 2d 758, 760, 469 N.W.2d 207, 208 (Ct. App. 1991).

Riley, relying on *United States v. Halper,* 490 U.S. 435 (1989), contends that the $43,000 fine is a punishment for double jeopardy purposes because it is punitive rather than remedial.[3] We disagree. Irwin Halper defrauded the government of a total of $585 by filing many false Medicare claims over a two-year period. He was convicted of sixty-five counts of violating the criminal false-claims statute, sentenced to two years in prison and fined $5000. The government then imposed an additional $2000 civil penalty for each falsely filed claim for a total fine of $130,000—some 222 times the government's loss from Halper's fraud.

Describing the protection afforded by the double jeopardy clause as "intrinsically personal," the Supreme Court held that Halper's fine was a punishment for double jeopardy purposes. The court explained that in assessing whether a sanction constitutes punishment "the labels 'criminal' and 'civil' are not of paramount importance," but that the inquiry should focus on "the character of the actual sanctions imposed on the individ-

---

[3]The state contends that Riley has waived his right to make this argument on appeal because he did not raise it in the trial court. A claim under the double jeopardy clause, however, is not waived for failure to bring it before the trial court. *State v. Morris,* 108 Wis. 2d 282, 284 n.2, 322 N.W.2d 264, 265 (1982); *State v. Olson,* 127 Wis. 2d 412, 423–24 n.7, 380 N.W.2d 375, 381 (Ct. App. 1985); *Menna v. New York,* 423 U.S. 61, 62 (1975).

ual by the machinery of the state." *Halper,* 490 U.S. at 447.

> [I]n a particular case a civil penalty . . . may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment.
>
> . . ..
>
> [P]unishment serves the twin aims of retribution and deterrence . . .. [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or determent purposes, is punishment . . ..
>
> [T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty [imposed and the purpose that the penalty] may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied to the individual case serves the goals of punishment. *Halper,* 490 U.S. at 442, 449, 448.[4]

The supreme court explained, however, that "it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction had accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment." *Halper,* 490 U.S. at 449. Noting that "the process of affixing a

---

[4]Prior to *Halper,* many observers believed that the double jeopardy prohibitions against multiple punishments did not extend to civil sanctions. Thus, *Halper* has been called a "depart[ure] from fifty years of double jeopardy jurisprudence." Andrew Glickman, Note, *Civil Sanctions and the Double Jeopardy Clause: Applying the Multiple Punishment Doctrine to Parallel Proceedings after United States v. Halper,* 76 Univ. Virginia L. Rev. 1251 (1990).

sanction that compensates the Government for all its costs inevitably involves an element of rough justice," the court stated that "the ordinary case" of a "fixed-penalty-plus-double-damages provision[ ]" would do "no more than make the government whole." *Id.* at 449.

We conclude that Riley's fine was not a punishment for double jeopardy purposes. Unlike the penalty in *Halper,* which was so grossly disproportionate the government's actual damages, the penalty assessed against Riley was merely equal to the tax he failed to pay. Indeed, the penalty is less burdensome than the "fixed-penalty-plus-double-damages" provisions noted with approval by the *Halper* court. We agree with the state that this "one-for-one penalty" cannot reasonably be characterized as "so extreme and so divorced from the Government's damages" that it may be considered punitive. *Halper,* 490 U.S. at 442.

Riley also argues that *Halper* requires the state to produce an accounting of its costs and damages. We agree that in some cases such an accounting may be appropriate.

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. *Halper,* 490 U.S. at 449.

The Supreme Court never suggested, however, that such an accounting was necessary in all cases. Rather, it

stated that an accounting was due when the "subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss." *Id.* As we have noted, Riley's fine does not fail the "rational relationship" test.

*By the Court.*—Judgment and order affirmed.