STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Rachel W. KELTY, Defendant-Appellant.

Supreme Court

*No. 2003AP3055–CR. Oral argument September 9, 2005. —Decided July 12, 2006.*

2006 WI 101

(Also reported in 716 N.W.2d 886.)

For the plaintiff-respondent-petitioner the cause was argued by *William C. Wolford,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief by *Michael J. Fairchild* and *Michael J. Fairchild Law Office,* Menomonie, and oral argument by *Michael J. Fairchild.*

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals that reversed an order of the Circuit Court for Wood County,

James M. Mason, Judge.[1] The circuit court denied Rachel Kelty's postconviction, post-sentencing motion to withdraw her plea to two counts of first-degree reckless injury in violation of Wis. Stat. § 940.23(1)(a) (1999–00).[2] In her motion, Kelty challenged the validity of her conviction to the second reckless injury count, claiming that it was multiplicitous. The circuit court concluded that Kelty had waived any double jeopardy defect by pleading guilty to both counts. A divided court of appeals reversed, holding that only an express waiver of double jeopardy can relinquish a defendant's double jeopardy rights.

¶ 2. We are asked to decide whether an otherwise satisfactory guilty plea is sufficient to relinquish a double jeopardy/multiplicity challenge upon direct appeal. We conclude that a guilty plea relinquishes the right to assert a multiplicity claim when the claim cannot be resolved on the record. When a defendant enters a knowing, intelligent, and voluntary guilty plea, the nature and effect of the plea necessarily mean that the defendant gives up the right to a *fact-finding* hearing on the propriety of multiple charges. *United States v. Broce,* 488 U.S. 563, 576 (1989).

¶ 3. Our decision should not be understood to render guilty pleas impervious to double jeopardy challenges. A defendant retains the right (1) to challenge whether a plea is knowing, intelligent, and voluntary by pointing to errors in the plea colloquy pursuant to *State v. Brown,* 2006 WI 100, 293 Wis.2d 594, 716 N.W.2d 906 and *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12

---

[1] *State v. Kelty,* No. 2003AP3055–CR, unpublished slip op. (Wis. Ct. App. Nov. 11, 2004).

[2] All subsequent references to the Wisconsin Statutes are to the 1999–00 edition unless otherwise indicated.

(1986); (2) to claim the ineffective assistance of counsel pursuant to *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996); and (3) to challenge the authority of the state to prosecute her and the power of a court to enter the conviction or impose the sentence, where the existing record allows the court to determine whether the defendant's double jeopardy rights have been violated. *See Broce*, 488 U.S. at 569, 574–75.[3] Because Kelty's attempt to withdraw her guilty plea cannot meet any of these grounds for withdrawal,[4] we reverse the court of appeals.

## I. FACTS AND PROCEDURAL HISTORY

¶ 4. On September 14, 2000, Rachel Kelty was a guest in the Wisconsin Rapids home of Candice Falkosky, who was babysitting her 16–month old nephew. The child was sleeping on the second floor when Kelty came downstairs with "blood all over her."[5] When Falkosky hurried upstairs, she found the baby in his crib covered with blood. There was broken glass in the

---

[3] Although the United States Supreme Court concluded a defendant can relinquish the right to raise a double jeopardy challenge by entering a guilty plea, the Court recognized these three possibilities for relief in *United States v. Broce*, 488 U.S. 563, 569, 574–75.

[4] Kelty did claim she received the ineffective assistance of trial counsel in her postconviction motion. The circuit court rejected this claim and Kelty did not appeal from this portion of the decision. Additionally, at the postconviction hearing, Kelty acknowledged that she knowingly, intelligently, and voluntarily pled guilty. Her only challenge to her conviction, therefore, is that she did not intentionally relinquish her double jeopardy rights.

[5] Several persons in addition to Candice Falkosky were present when Kelty came downstairs.

baby's crib and on the floor of his room. Falkosky at first noticed only one laceration on the top of the baby's head. "I didn't see 'cause he was laying on his back so I didn't see the one behind him yet." After she brought the baby downstairs, however, Falkosky saw a depression at the base of the baby's skull, which she described as "deep" and "big." Eventually, the baby was transported by med flight to St. Joseph's Hospital in Marshfield, where Dr. Hans G. Vanderspek, a neurosurgeon, performed emergency surgery.

¶ 5. The Wood County District Attorney subsequently charged Kelty with two counts of intentionally causing great bodily harm to a child in violation of Wis. Stat. § 948.03(2)(a). The criminal complaint asserted that Kelty struck the baby in the head at least twice with two different objects. At the preliminary examination, Dr. Vanderspek testified that the baby suffered two skull fractures, one at the base of his head and the other above his left ear. He noted that the larger, depressed skull fracture at the base of the child's head was likely caused by a "blunt or sharp object," while the small, round depression on the top appeared to have been caused by a hammer-like object. Dr. Vanderspek said that the two depressions were "quite a ways" from each other and that "the two were not connected." "In my opinion," he declared, "there had to be two separate blows." "I had never seen anything so brutal in a child."

¶ 6. Kelty was the subject of unrelated charges filed both before and after the September 14 incident. All charges against her were consolidated at a March 19, 2001, plea hearing, when Kelty pled guilty to two counts of first-degree reckless injury in violation of Wis. Stat. § 940.23(1)(a), in an amended information. As part of the plea agreement, Kelty also pled guilty to two counts of forgery in violation of Wis. Stat. § 943.38(1)(a), one

misdemeanor count of intimidating a victim in violation of Wis. Stat. § 940.44, and one misdemeanor count of bail jumping in violation of Wis. Stat. § 946.49. Numerous other charges were dismissed, although some were read in.

¶ 7. At the plea hearing, the circuit court conducted a lengthy colloquy to establish that Kelty was making her guilty plea knowingly, intelligently, and voluntarily. The circuit court also established a factual basis for the two counts. During the plea hearing, the following exchange occurred involving the circuit court, Kelty, and Kelty's attorney, Ina Poganis:

THE COURT: There are actually two charges here against you ... arising on September 14th, 2000. And one is—because the doctor testified—or would testify as he did at the preliminary hearing that there was a blunt—a blow with a blunt object to the child's head, and another with regard to an instrument that would have cut the child's head.

So you're charged with two separate counts here; do you understand that?

KELTY: Yes.

THE COURT: Are you willing to stipulate, Attorney Poganis, that there's a sufficient factual basis to support the charges in the [amended] information as that evidence is found in the original criminal complaint and in the transcript of the preliminary hearing?

POGANIS: Yes.

¶ 8. In the following exchange, the circuit court also confirmed that Kelty struck the baby twice:

THE COURT: In both cases, in both blows to the child's head—and there were at least two blows according to Dr. Vanderspek; do you understand that?

KELTY: Yes.

¶ 9. The circuit court sentenced Kelty to consecutive sentences of ten years in prison and five years of extended supervision for the first count of first-degree reckless injury and five years in prison and five years of extended supervision for the second count of first-degree reckless injury.[6]

¶ 10. Kelty's appellate attorney filed a no-merit report with the court of appeals. The court determined there might be an issue of arguable merit and directed Kelty's attorney to investigate a multiplicity challenge on whether the two reckless injury counts might be identical in fact.

¶ 11. Following the lead of the court of appeals, Kelty then moved for postconviction relief, asking to withdraw her guilty pleas. She gave two reasons. First, she claimed that she did not intentionally waive her right to challenge her conviction on two counts of reckless injury as multiplicitous. Second, she claimed that her attorney failed to discuss or discuss adequately with her a multiplicity challenge to the two counts. The circuit court held an evidentiary hearing on the ineffective assistance of counsel portion of the motion. The court subsequently denied the motion for postconviction relief in a lengthy written decision, finding that Kelty's "acknowledgement of the distinct facts in support of each separate charge indicates that double jeopardy is not an issue [and] finding alternatively that

___

[6] In effect, Kelty received concurrent sentences on her other convictions.

Kelty's pleas did constitute express waivers of double jeopardy . . . ." It also denied her claim of ineffective assistance of counsel.

¶ 12. The court of appeals reversed, concluding that Kelty could waive her double jeopardy rights only through an express waiver, as required by *State v. Hubbard*, 206 Wis. 2d 651, 656, 558 N.W.2d 126 (Ct. App. 1996). The State petitioned for review, arguing that *Broce* governed the case, not *Hubbard*.

## II. STANDARD OF REVIEW

¶ 13. The parties dispute whether Kelty's guilty plea relinquished her right to appeal an alleged double jeopardy violation. This issue implicates questions of waiver and what effect a guilty plea has upon the right to be free from double jeopardy. These are questions of law we review de novo.

## III. DISCUSSION

¶ 14. This case appears to present an issue of first impression in Wisconsin jurisprudence, namely, whether a defendant who seeks to withdraw a guilty plea on double jeopardy grounds should be granted a fact-finding hearing, at which evidence will be presented, so that the court can determine whether the charges to which she pled are multiplicitous.

A. Double Jeopardy

¶ 15. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const.

amend. V.[7] In the Wisconsin Constitution, the Double Jeopardy Clause is located in Article I, Section 8(1) and reads, "no person for the same offense may be put twice in jeopardy of punishment . . . ." We view these provisions as "identical in scope and purpose" and therefore accept the "decisions of the United States Supreme Court as controlling interpretations of the double jeopardy provisions of both constitutions." *State v. Davison,* 2003 WI 89, ¶ 18, 263 Wis. 2d 145, 666 N.W.2d 1 (citing cases).

¶ 16. The Double Jeopardy Clause protects against successive prosecutions and multiple punishments for the same offense. *United States v. Dixon,* 509 U.S. 688, 696 (1993). Protection against successive prosecutions precludes both "a second prosecution for the same offense after acquittal[]" and "a second prosecution for the same offense after conviction." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). Protection against multiple punishments or multiplicity involves three strains of analysis: (1) second sentence challenges in which a court is alleged to have improperly increased a defendant's first sentence for a charged offense; (2) unit-of-prosecution challenges in which the state is alleged to have improperly subdivided the same offense into multiple counts of violating the same statute; and (3) cumulative-punishment challenges in which the state is alleged to have improperly prosecuted the same offense under more than one statute. *Davison,* 263 Wis. 2d 145, ¶ 26.[8]

---

[7] The Double Jeopardy Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 787 (1969).

[8] In *State v. Derango,* 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833, the court stated: "Multiplicity challenges . . . usu-

¶ 17. This case presents a unit-of-prosecution (or "continuous offense") challenge because Kelty disputes her conviction of two counts under one statute in a single prosecution.[9] Thus, the precise issue presented is whether an otherwise satisfactory guilty plea to two counts of violating the same statute in a single prosecution is sufficient to waive a unit-of-prosecution multiplicity challenge on direct appeal.

B. The Guilty-Plea-Waiver Rule

¶ 18. The general rule is that a guilty, no contest, or *Alford*[10] plea "waives all nonjurisdictional defects, including constitutional claims[.]" *State v. Multaler*, 2002 WI 35, ¶ 54, 252 Wis. 2d 54, 643 N.W.2d 437. Courts refer to this as the guilty-plea-waiver rule.[11] *See*

ally arise in two different situations: (1) when a single course of conduct is charged in multiple counts of the same statutory offense (the 'continuous offense' cases); and (2) when a single criminal act encompasses the elements of more than one distinct statutory crime." *Id.*, ¶ 27.

[9] The fact that Kelty raises a unit-of-prosecution challenge is significant because resolving this type of claim often requires close scrutiny of the facts to determine whether the defendant's underlying conduct was identical in fact. *Cf. State v. Lechner*, 217 Wis. 2d 392, 402, 576 N.W.2d 912 (1998). Resolution of a unit-of-prosecution challenge is likely to be more fact dependent than other types of double jeopardy challenge, and thus, less susceptible to successful attack on appeal, since a guilty plea relinquishes a defendant's right to fact-finding into disputed or uncertain facts.

[10] An *Alford* plea is a plea in which the defendant agrees to accept a conviction while simultaneously maintaining his or her innocence. *North Carolina v. Alford*, 400 U.S. 25 (1970).

[11] As we have noted previously, the term "waiver" as used here does not convey the usual meaning of an intentional

*State v. Riekkoff,* 112 Wis. 2d 119, 122–23, 332 N.W.2d 744 (1983). Like the general rule of waiver, the guilty-plea-waiver rule is a rule of administration and does not involve the court's power to address the issues raised. *Riekkoff,* 112 Wis. 2d at 124.

¶ 19. Since 1982 Wisconsin has recognized an exception to the guilty-plea-waiver rule for double jeopardy defects. *Davison,* 263 Wis. 2d 145, ¶ 14; *Multaler,* 252 Wis. 2d 54, ¶ 54; *State v. Robinson,* 2002 WI 9, ¶ 13, 249 Wis. 2d 553, 562, 638 N.W.2d 564; *State v. Lechner,* 217 Wis. 2d 392, 404 n.8, 576 N.W.2d 912 (1998); *State v. Morris,* 108 Wis. 2d 282, 284 n.2, 322 N.W.2d 264 (1982) (citing *Menna v. New York,* 423 U.S. 61, 62 (1975)); *State v. Lasky,* 2002 WI App 126, ¶ 11, 254 Wis. 2d 789, 797, 646 N.W.2d 53; *Hubbard,* 206 Wis. 2d at 655; *State v. Riley,* 166 Wis. 2d 299, 302 n.3, 479 N.W.2d 234 (Ct. App. 1991); *State v. Hartnek,* 146 Wis. 2d 188, 192 n.2, 430 N.W.2d 361 (Ct. App. 1988); *State v. Olson,* 127 Wis. 2d 412, 423 n.7, 380 N.W.2d 375 (Ct. App. 1985). The effect of this exception to the guilty-plea-waiver rule has been to allow a defendant to plead guilty and then challenge her conviction and sentence as violating the Double Jeopardy Clause. To avoid this result, however, we have allowed an express waiver of

relinquishment of a known right. *State v. Riekkoff,* 112 Wis. 2d 119, 128, 332 N.W.2d 744 (1983). Instead, the effect of a guilty plea is to cause the defendant "to forego the right to appeal a particular issue." *Id.* If we were writing on a blank slate, a more accurate label would be the "guilty-plea-forfeiture" rule, or something to that effect. *See United States v. Olano,* 507 U.S. 725, 733 (1993) (defining forfeiture as "the failure to make the timely assertion of a right"); Peter Westen, *Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure,* 75 Mich. L. Rev. 1214, 1214 (1975) (explaining that forfeiture "occurs by operation of law without regard to the defendant's state of mind").

double jeopardy rights to foreclose a defendant from raising a double jeopardy defect after pleading guilty. *Robinson,* 249 Wis. 2d 553, ¶ 13; *see also Hubbard,* 206 Wis. 2d at 656 & n.4.

¶ 20. The double jeopardy exception to the guilty-plea-waiver rule entered Wisconsin jurisprudence without fanfare. This court simply recognized the exception in a footnote, noting that certain defects, including double jeopardy claims, survive a guilty plea. *See Morris,* 108 Wis. 2d at 284 n.2.

¶ 21. In retrospect, the double jeopardy exception recognized in *Morris* was somewhat unusual in that it overruled, sub silentio, a number of Wisconsin cases. Prior to *Morris,* this court had held that a guilty plea waived a double jeopardy challenge, except where the double jeopardy violation was evident from the record. *See Smith v. State,* 60 Wis. 2d 373, 379–80, 210 N.W.2d 678 (1973); *Nelson v. State,* 53 Wis. 2d 769, 773–75, 193 N.W.2d 704 (1972); *Belter v. State,* 178 Wis. 57, 63, 189 N.W. 270 (1922) ("The fact that he interposed no plea as to former jeopardy when brought before the upper branch of such court . . . cannot deprive him of his right to rely upon it here, *where it is so clearly a matter of record.*") (emphasis added).[12] *Morris* made no mention of any of these cases.

¶ 22. Despite long-standing precedent to the contrary, the *Morris* footnote had a cascading effect. Be-

_____

[12] In *Hawkins v. State,* 30 Wis. 2d 264, 268, 140 N.W.2d 226 (1966), the court cited with approval the following statement from an *American Law Reports* annotation:

It seems clear that the constitutional protection against double jeopardy may be waived by the accused by his own voluntary act, and this principle has been successfully invoked in various instances involving double jeopardy based on an earlier plea of guilty.

tween 1982 and 1998, a handful of published decisions from the court of appeals cited *Morris* as authority for the double jeopardy exception to the guilty-plea-waiver rule. *E.g., Hubbard,* 206 Wis. 2d at 655; *Riley,* 166 Wis. 2d at 302 n.3; *Hartnek,* 146 Wis. 2d at 192 n.2. In 1998 this court again observed that double jeopardy claims are an exception to the guilty-plea-waiver rule. *Lechner,* 217 Wis. 2d at 404 n.8. The court invoked the double-jeopardy exception to the guilty-plea-waiver rule to reach the merits of the defendant's double jeopardy challenges. *Id.* at 403–04. It was not until *Multaler,* however, that the court explicitly rejected the State's argument that a plea waived the right to bring a multiplicity challenge. *Multaler,* 252 Wis. 2d 54, ¶ 54. In doing so, we simply cited *Morris* as authority for this proposition. *Id.*

¶ 23. In *Morris* we derived the double jeopardy exception to the guilty-plea-waiver rule in part from *Menna.* In *Menna* the State of New York sentenced Steve Menna to 30 days in civil jail for contempt of court because he refused to testify before a grand jury. *Menna,* 423 U.S. at 61. Two years later, New York prosecuted Menna again for the same refusal to testify. *Id.* Menna pled guilty to this second prosecution and appealed on double jeopardy grounds. *Id.* at 61–62. The New York Court of Appeals affirmed Menna's conviction, holding that he had waived his double jeopardy rights by pleading guilty. *Id.* at 62.

¶ 24. The United States Supreme Court reversed, concluding that "[w]here the State is precluded by the United States Constitution from haling a defendant

*Hawkins,* 30 Wis. 2d at 268 (citing Annotation, *Plea of Guilty as basis for claim of double jeopardy in attempted subsequent prosecution for same offense,* 75 A.L.R.2d 683, 700 (1961)).

into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Id.* In a footnote to this statement the Supreme Court elaborated: "We do not hold that a double jeopardy claim may never be waived." *Id.* at 63 n.2. "We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." *Id.*

¶ 25. Based on *Menna,* we, like a number of courts, made the sweeping statement that a guilty plea cannot waive a double jeopardy claim. *Morris,* 108 Wis. 2d at 284 n.2. Our statement in *Morris* was premised on the belief that *Menna* set forth an interpretation of the federal Double Jeopardy Clause that required this limitation on guilty pleas.

¶ 26. *Broce,* however, dispelled the notion that the federal constitution prevents a guilty plea from waiving a double jeopardy claim. Contrary to our interpretation of *Menna* in *Morris,* the Supreme Court explained that a guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure waives a double jeopardy claim unless the record reveals "the court had no power to enter the conviction or impose the sentence[,]" or, put differently, the state lacked the power to hale the defendant into court and prosecute her. *Broce,* 488 U.S. at 569, 573–75. Under *Broce,* if a court cannot determine, based on the record, whether there is a double jeopardy violation, a guilty plea will relinquish a defendant's opportunity to have her double jeopardy claim resolved on the merits. *Id.* at 576.

¶ 27. Because *Broce* explains the effect of guilty pleas in the federal criminal justice system, it is not binding precedent on this court. *Cf. Lefkowitz v.Newsome,* 420 U.S. 283, 288, 293 (1975) (noting that the

effect of a guilty plea is a function of state law). Nevertheless, after considering the relationship of *Broce* to *Morris* and its progeny, especially *Hubbard,* we conclude that the rule in *Broce* that a guilty plea can waive double jeopardy defects, subject to certain exceptions, is consistent with Wisconsin case law and properly balances the public's interest in efficient judicial administration with a defendant's double jeopardy rights.

## C. The Relationship Between *Broce* and *Hubbard*

¶ 28. In *Broce,* Ray Broce pled guilty to two counts of conspiracy. *Broce,* 488 U.S. at 566. Another defendant, involved in the same conspiracy but prosecuted separately for two counts of conspiracy, successfully argued that there was only a single conspiracy and that the Double Jeopardy Clause barred the multiplicitous charges. *Id.* at 566–67. Relying on results from this other prosecution, Broce collaterally attacked his two-count conviction as multiplicitous. *Id.* at 567.

¶ 29. The Supreme Court held that Broce's guilty plea relinquished his right to assert a double jeopardy claim, even though he never expressly waived this right. *Id.* at 573–74. The Court reasoned, "a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he has committed two separate crimes." *Id.* at 570. Thus, a guilty plea alone is a sufficient basis to conclude that a defendant has relinquished a multiplicity challenge. *Id.* at 571 n.*.

¶ 30. The holding in *Broce* followed from the nature and effect of a guilty plea. A guilty plea "is an 'admission that [the defendant] committed the crime

charged against him.' " *Broce,* 488 U.S. at 570 (quoting *North Carolina v. Alford,* 400 U.S. 25, 32 (1970)). It is an admission that "all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence[]" are true. *Id.* at 569. These admissions necessarily entail that a defendant relinquishes her opportunity to receive a factual hearing on a fact-intensive unit-of-prosecution claim after pleading guilty. *Id.* at 573–74.

¶ 31. The only published Wisconsin case that discusses *Broce* is *Hubbard.* In *Hubbard* the court of appeals held that a plea does not waive a double jeopardy defense and that only an express waiver can preclude a defendant from having the merits of his double jeopardy claim reviewed on appeal. *Hubbard,* 206 Wis. 2d at 655, 657. The court distinguished *Broce,* limiting its holding to situations where (1) a defendant seeks to collaterally attack a guilty plea, and (2) the double jeopardy violation cannot be resolved on the record. *Id.* at 655. The *Hubbard* court found the facts of the case satisfied neither of the two prerequisites for invoking *Broce,* because Hubbard challenged his convictions as multiplicitous on direct appeal and it was possible to resolve the multiplicity challenge on the record. *Id.* at 656. Based solely on the record, therefore, the court of appeals reviewed the merits of Hubbard's multiplicity claim, concluding his conviction for six counts of issuing worthless checks did not violate double jeopardy. *Id.* at 662.

¶ 32. Kelty relies upon *Hubbard* for the rule that only an express waiver can relinquish a defendant's right to raise a double jeopardy challenge after pleading guilty. Kelty argues the court of appeals in the present case correctly invoked *Hubbard.* She contends she should be allowed to withdraw her guilty pleas if the

State fails to present evidence that establishes beyond a reasonable doubt that the two counts of first-degree reckless injury are not multiplicitous. According to Kelty, *Broce* does not apply because it precludes a double jeopardy challenge to a guilty plea only on collateral attack, not on direct appeal.

¶ 33. The State responds by asking this court to overrule *Hubbard* insofar as it limited the applicability of *Broce* to collateral attacks. The State asserts that the distinction between a collateral attack and a direct appeal was irrelevant to the analysis in *Broce*. According to the State, the fundamental holding of *Broce* is that a defendant relinquishes the right to an evidentiary hearing on a double jeopardy claim when she pleads guilty. Therefore, the State reasons, the court of appeals erred, both in *Hubbard* and in the present case, when it elevated the distinction between direct appeal and collateral attack to a reason not to apply *Broce*.

¶ 34. We agree with the State. A guilty plea waives a multiplicity claim anytime the claim cannot be resolved on the record, regardless whether a case presents on direct appeal or collateral attack. In *Broce* the distinction between direct appeal and collateral attack was not material to the discussion; it was just happenstance that the case involved a collateral attack.[13]

---

[13] The Supreme Court made several references in *Broce* to collateral attack. However, the majority opinion cited with approval *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), where the Court said:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense[s] with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional

Subsequent decisions from the federal circuits confirm this conclusion. *See United States v. Kurti,* 427 F.3d 159, 162 (2d Cir. 2005) (applying *Broce* on direct appeal); *United States v. Leyland,* 277 F.3d 628, 631–32 (2d Cir. 2002) (same); *United States v. Pollen,* 978 F.2d 78, 83–84 (3d Cir. 1992); *United States v. Quinones,* 906 F.2d 924, 925–27 (2d Cir. 1990); *United States v. Kaiser,* 893 F.2d 1300, 1302 (11th Cir. 1990); *United States v. Montilla,* 870 F.2d 549, 550, 553 (9th Cir. 1989) (applying *Broce* on direct appeal to conclude the defendant waived the right to an evidentiary hearing on her due process challenge).

¶ 35. We know of no published decision that has refused to apply *Broce* for the sole reason that a defendant challenged a guilty plea on direct appeal rather than collateral attack.

¶ 36. In the context of addressing the question whether a guilty plea waives the right to an evidentiary hearing on a multiplicity challenge, we conclude the distinction between direct appeal and collateral attack is irrelevant. Over and over the *Broce* court stressed the nature and effect of a guilty plea and the admissions of guilt that necessarily flow from the entry of a voluntary plea. *Broce,* 488 U.S. at 570, 573–74. Recognizing the effect of a knowing, intelligent, and voluntary plea

rights that occurred prior to the entry of his guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

The dissenting opinion in *Broce* also acknowledged that "in most instances a guilty plea is conclusive and resolves all factual issues necessary to sustain a conviction." *Broce,* 488 U.S. at 581 (Blackmun, J., dissenting). It cited *Abney v. United States,* 431 U.S. 651, 659 (1977), for the proposition that "in a claim of double jeopardy 'the defendant makes no challenge whatsoever to the merits of the charge against him.' "

81

surpasses the state's interest in finality, although that interest, particularly when a plea bargain is involved, is also substantial.

¶ 37. Because the distinction between a direct appeal and collateral attack is irrelevant, this case is on the same track as *Broce*. We conclude that neither overbroad precedent from Wisconsin courts nor any policy view of our criminal justice system warrants our breaking ranks with *Broce*.[14]

1. *Broce* Is Consistent with Wisconsin Case Law

¶ 38. The differences that Kelty seeks to draw between *Broce* and the Wisconsin rule of express waiver are not as clear-cut as she claims. The Supreme Court in *Broce* did not conclude that a guilty plea waives the right to raise a double jeopardy challenge. Rather, the Court held that a guilty plea *waives the right to a fact-finding hearing* on a double jeopardy challenge. *Broce,* 488 U.S. at 573. Thus, "a plea of guilty to a charge does not waive a claim that—*judged on its face*—the charge is one which the State may not constitutionally prosecute." *Id.* at 575 (quoting *Menna,* 423 U.S. at 63 n.2). What this means is that a court will consider the

---

[14] This conclusion is faithful to the Supreme Court's decision in *Menna v. New York,* 423 U.S. 61, 63 n.2 (1975), where the Court said:

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established. (Emphasis added.)

merits of a defendant's double jeopardy challenge *if* it can be resolved on the record as it existed at the time the defendant pled.[15]

---

[15] The federal circuit courts that have applied *Broce* decide a double jeopardy challenge to a guilty plea when it can be resolved from the face of the indictment and the record. *E.g., United States v. Brown,* 155 F.3d 431, 434–35 (4th Cir. 1998) (reversing the district court's decision to hold an evidentiary hearing on the defendant's double jeopardy challenge to his guilty plea and remanding "for the district court to determine whether, on the face of the record as it existed before the evidentiary hearing," a double jeopardy violation was evident); *see also United States v. Quinones,* 906 F.2d 924, 927 (2d Cir. 1990) (noting the defendant's "double jeopardy claim rests on facts apparent in the record and thus, under *Broce,* was arguably not waived."); *United States v. Pollen,* 978 F.2d 78, 84 (3d Cir. 1992) (after noting that a defendant cannot receive an evidentiary hearing where "an indictment does not raise Double Jeopardy concerns on its face," the court examined the record to determine whether there was a multiplicity violation); *Taylor v. Whitley,* 933 F.2d 325, 328 (5th Cir. 1991) (first examining the face of the indictment to confirm that no double jeopardy violation was established, and, second, examining the record to confirm that no double jeopardy violation could be definitively established); *United States v. Makres,* 937 F.2d 1282, 1286 (7th Cir. 1991) (holding that *Broce* forecloses an evidentiary hearing to determine whether a double jeopardy violation exists after the defendant has pleaded guilty); *Thomas v. Kerby,* 44 F.3d 884, 888 (10 Cir. 1995) ("if a double jeopardy violation is apparent on the face of the indictment and/or the record existing at the time the plea was entered, it is not waived"); *United States v. Kaiser,* 893 F.2d 1300, 1303 & n.3 (11th Cir. 1990) (distinguishing *Broce* because "the record that existed at the time [the defendant] made his plea[]" demonstrated a double jeopardy violation).

Because pleas may be entered at different stages of a criminal proceeding, "the record" as it existed at the time of the plea will vary from case to case. In this case, a plea was entered after a preliminary examination, so that the record includes a complaint, a preliminary hearing transcript, and an information.

¶ 39. Except for some unnecessarily expansive language on the need for express waiver, *e.g., Robinson,* 249 Wis. 2d 553, ¶ 13 ("An express waiver of a double jeopardy claim in a plea agreement is needed for a waiver of a double jeopardy claim."), and *Hubbard,* 206 Wis. 2d at 656, none of the published Wisconsin cases that recognize a double jeopardy exception to the guilty-plea-waiver rule is inconsistent with *Broce* on its facts. In all these Wisconsin cases, appellate courts resolved any double jeopardy issue based on the record *without* a fact-finding hearing to supplement the record. *See Multaler,* 252 Wis. 2d 54, ¶¶ 59, 66 (based on the record, no multiplicity violation); *Robinson,* 249 Wis. 2d 553, ¶ 12 (multiplicity violation acknowledged by parties); *Lechner,* 217 Wis. 2d at 413, 416–17 (based on the record, no multiplicity violation); *Hubbard,* 206 Wis. 2d at 662 (same); *Riley,* 166 Wis. 2d at 304 (same); *Hart- nek,* 146 Wis. 2d at 197 (same). Thus, the analysis in these cases is exactly what *Broce* requires: if a double jeopardy challenge can be resolved without any need to venture beyond the record, the court should decide the claim on its merits. *Broce,* 488 U.S. at 575–76. Other- wise, by entering a guilty plea, a defendant relinquishes the opportunity to receive a fact-finding hearing on a double jeopardy claim. *See Broce,* 488 U.S. at 573–74, 576. We withdraw the language in *Robinson,* 249 Wis. 2d 553, ¶ 13, *Hubbard,* 206 Wis. 2d at 656, and other cases that suggests that *only* express waiver can waive a double jeopardy claim.

2. *Broce* Reflects Sound Guilty Plea Practice

¶ 40. The rule set forth in *Broce* balances the conflicting interests of a defendant and the state. On one hand, *Broce* is a check on defendants who may attempt gamesmanship or seek two kicks at the cat.

Consider the facts of this case. Kelty reached a plea agreement with the State in which the State agreed to drop charges and have other charges read in at sentencing. Significantly, this plea agreement reduced Kelty's maximum exposure from 128 years to 61–1/2 years. Despite these concessions, Kelty still challenges her conviction as multiplicitous.[16] She is demanding an evidentiary hearing, almost six years after the crimes were committed, and more than five years after entering her pleas. If the court of appeals decision in the present case supplied the rule of law, Kelty would

---

[16] At the hearing on Kelty's motion to withdraw her plea based on ineffective assistance of counsel, Kelty's original attorney, Ina Poganis, testified that she met with Kelty on numerous occasions to discuss the case.

> [P]hysical evidence and forensic evidence kept coming in. I had several discussions with the then District Attorney, Mr. [Gregory] Potter, regarding . . . how he wanted to pursue the case. We had discussions about whether or not the charges that were actually issued were multiplicitous. I was trying to get him to drop one of them. He was adamant he would not drop them.

> In fact, if we contested the multiplicity issue or went to trial he was going to add charges, and I explained all of this to Rachel on numerous occasions. I met with her frequently and explained to her what the options were, what the risks were. My concern was that if we contested the multiplicity issue we could very well not win because there was evidence then that two different objects had been used to injure the baby. Two different objects. That's what the doctor testified to at the preliminary hearing, but even if we won and the Court dismissed one count, Mr. Potter indicated that he would then charge additional counts and he did have evidence regarding a bite mark on the baby's thigh, very noticeable bite mark that a forensic dentist indicated was consistent with Rachel's teeth. And there were numerous other cuts to the baby's back as if someone had stabbed him and then pulled the skin up with some short object. So, I discussed all this with Rachel in considerable detail, not just the multiplicity issue at a motion hearing, but what we would be facing at a trial if we contested the whole situation.

receive her fact-finding hearing even though the case has already received exhaustive review by Judge Mason.

¶ 41. Functionally, this hearing would likely be comparable to a small trial. Unlike a trial, however, Kelty would have nothing to lose since she has already negotiated a plea agreement and has already been sentenced. Under the court of appeals analysis, Kelty would receive the benefit of a guilty plea and a trial even though a guilty plea necessarily established her factual guilt, *Broce*, 488 U.S. at 569; *State v. Pohlhammer*, 82 Wis. 2d 1, 4, 260 N.W.2d 678 (1978) (on motion for re-hearing) (originally reported in 78 Wis. 2d 516, 254 N.W.2d 478 (1977)), and waived her rights to a trial, to present evidence, and to make the State present evidence to establish her guilt beyond a reasonable doubt. *Brown*, 293 Wis.2d 594, ¶ 67.

¶ 42. On the other hand, *Broce* ensures adequate protection for the double jeopardy rights of defendants. Defendants may present a double jeopardy challenge if the issue can be resolved on the record, as recognized in *Broce*. Only the class of double jeopardy defects that cannot be resolved on the record will escape substantive review. This result logically follows from the nature of a guilty plea. Where doubts about the presence of a double jeopardy violation exist, these doubts should be treated no differently than other factual and legal uncertainties, which are also resolved by a guilty plea. Just as a defendant does not know whether the state will be able to prove the factual predicates necessary to establish guilt beyond a reasonable doubt, a defendant does not know whether she will succeed on a double jeopardy claim that is heavily enmeshed with disputed and uncertain facts. In both situations, a plea should

waive the defendant's right to make the state prove beyond a reasonable doubt the facts necessary to support guilt.

¶ 43. Although *Broce* limits the right to substantive review of some alleged double jeopardy violations, a defendant may obtain a postconviction fact-finding hearing when she seeks to withdraw a guilty plea because (1) the plea is not knowing, intelligent, and voluntary; or (2) the defendant received ineffective assistance of counsel in deciding to enter a plea. *Broce,* 488 U.S. at 569, 574. In both of these situations, *if the defendant's postconviction motion is sufficient,* she is entitled to a fact-finding hearing. A guilty plea waives constitutional trial rights, but does not waive Fourteenth Amendment due process rights or the Sixth Amendment right to counsel, which are the rights implicated in a challenge that a guilty plea is not knowing, intelligent, and voluntary, and a challenge that the defendant received ineffective assistance of counsel.

¶ 44. A properly conducted plea colloquy assures that the defendant understands the nature of the charges and the elements the state would be required to prove at trial. It also establishes that there is a factual basis for each of the charges against the defendant[17] and that the defendant understands the trial rights she

---

[17] In *State v. Johnson,* 207 Wis. 2d 239, 244, 558 N.W.2d 375 (1997), the court explained that plea withdrawal is only granted when necessary to correct a manifest injustice. "One type of manifest injustice is the failure to establish a sufficient factual basis that the defendant committed the offense to which he or she pleads." *Id.* The converse proposition is that when the state establishes a factual basis for charges and the defendant knowingly, intelligently, and voluntarily pleads to those charges, the

is giving up by entering a plea. *Brown,* 716 N.W.2d 906, ¶ 35; *Bangert,* 131 Wis. 2d at 261–62. Notwithstanding a guilty plea, when a defendant files a postconviction motion that adequately alleges that the plea was not knowing, intelligent, and voluntary because the plea colloquy was defective in discussing the elements of the crime or the factual basis for multiple charges, or because the defendant received ineffective assistance of counsel with regard to a possible multiplicity claim, she is entitled to a fact-finding hearing under well-established law.

¶ 45. Even though a guilty plea relinquishes a defendant's right to a fact-finding hearing on a double jeopardy challenge, nothing about our decision prevents a prosecutor or a court from securing a defendant's express waiver of his or her double jeopardy rights. *See Salters v. State,* 52 Wis. 2d 708, 714, 191 N.W.2d 19 (1971) (recognizing the validity of an express waiver of double jeopardy rights). We believe this is the better practice. Express waivers not only make for a more complete record, but also allow a circuit court and a prosecutor to guard against the possibility of reversible error. They lend greater confidence to convictions secured by guilty pleas, by reducing concerns that a conviction may have resulted in part from some shortcoming or deficiency of defense counsel.

D. Application

¶ 46. Absent an express waiver, a guilty plea relinquishes a double jeopardy claim if a court is unable to determine from the record whether there has been a constitutional violation. Our inquiry, therefore, is

defendant should not be permitted to contest the factual basis for the charges in a postsentencing evidentiary hearing.

whether it is possible to resolve Kelty's multiplicity claim on the current record.

¶ 47. We begin with the criminal complaint. The allegations in the complaint demonstrate the State could constitutionally prosecute Kelty for two counts of the same offense. The complaint states:

> Dr. Vanderspek [the surgeon who treated the baby] reported that he observed two skull fractures which appeared to have been caused by two different objects. One, consistent with a piece of glass and the second, consistent with a circular object. Dr. Vanderspek further stated that these were not accidental injuries.

¶ 48. Proceedings subsequent to the filing of the complaint confirm the viability of two separate charges. For instance, at the preliminary hearing Dr. Vanderspek testified that when he sliced open the baby's scalp to reveal his skull, he found two distinct fractures, "a small round kind of a half moon type depression more to the front, quite a ways away from the big one that we had seen, and the two were not connected . . . ." When he was asked whether two blows to the baby's head caused two skull fractures, Dr. Vanderspek stated "there had to be two separate blows, indeed." In sum, Dr. Vanderspek testified that in addition to the multiple lacerations on the baby's body, the baby suffered two skull fractures, one of which was a large depression and one of which was a small, round depression.

¶ 49. This evidence provides a basis for the two charges against Kelty, even though it is arguably open to two different explanations. One explanation favorable to Kelty's multiplicity theory is that she struck the baby in such rapid succession with different parts of the same instrument that the acts were identical in fact because she did not have "sufficient time for reflection

between the acts to re-commit [herself] to the criminal conduct." *See State v. Schaefer,* 2003 WI App 164, ¶ 46, 266 Wis. 2d 719, 668 N.W.2d 760.

¶ 50. An equally plausible explanation for the baby's injuries—an explanation that supports the State's position that the charges to which Kelty pled were not multiplicitous—is that Kelty struck the baby twice with two separate objects, each time committing herself to strike the baby, each blow separate, distinct, not identical in fact, as separate as the bite marks on the baby's thigh.

■

¶ 51. The record contains evidence to support the charges, but we cannot determine with certainty from the record exactly how Kelty inflicted the baby's injuries. In other words, we cannot determine with certainty whether Kelty's two convictions for first-degree reckless injury were multiplicitous. All we know is that the State had the power to prosecute both counts on the evidence available; the defendant pled guilty to both counts after hearing the charges and the evidence, and after conferring in detail with her attorney; and the court, after a very thorough plea colloquy, had the power to convict and sentence the defendant on both counts. Without additional fact-finding, we could not learn more than we know now. Accordingly, we conclude that Kelty's guilty plea relinquished her opportunity to have a court determine the merits of her multiplicity challenge. *See Broce,* 488 U.S. at 575–76.

## IV. CONCLUSION

¶ 52. When a defendant enters a knowing, intelligent, and voluntary plea, the defendant relinquishes the right to a *fact-finding* hearing into the merits of a

multiplicity claim. *Broce,* 488 U.S. at 576. Because the record in this case does not permit us to determine whether Kelty's double jeopardy rights have been violated, we conclude Kelty relinquished a unit-of-prosecution multiplicity challenge to her conviction for two counts of first-degree reckless injury.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 53. SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I write separately to emphasize three points. First, the majority opinion does not foreclose all evidentiary hearings regarding a double jeopardy claim when an accused pleads guilty. Second, the majority opinion's reliance on the risk of "gamesmanship" as a policy justification for the rule it adopts is misplaced. Third, the instant case is not a "waiver" case.

I

¶ 54. The majority opinion recognizes that a guilty plea does not render a judgment "impervious to double jeopardy challenges."[1] Even when an accused has pleaded guilty, he may make a double jeopardy challenge and get a hearing (1) when the challenge is that the plea is not knowing, voluntary, and intelligent, or (2) when claiming ineffective assistance of counsel.[2] In the instant case, the circuit court held a hearing to determine whether defense counsel's performance was deficient and the defendant's plea was knowing, voluntary, and intelligent. The circuit court found that defense counsel and the defendant had discussed a possible multiplicity defense. Accordingly, the circuit court

---

[1] Majority op., ¶ 3.

[2] *Id.,* ¶¶ 3, 43.

91

held that there was no ineffective assistance of counsel and that the defendant's plea was knowing, voluntary, and intelligent. After rendering this holding, the circuit court rejected the defendant's multiplicity challenge, apparently relying on the *Broce* case.

¶ 55. I write separately to emphasize this point made in the majority opinion:[3] Because the majority opinion includes some unnecessarily expansive language that, especially if taken out of context, might be understood to prohibit a fact-finding hearing on double jeopardy in all guilty plea circumstances.[4]

¶ 56. Although a right, such as the right to be free from double jeopardy, is subject to forfeiture, a guilty plea does not foreclose all opportunities to present evidence in support of a double jeopardy claim.[5] In particular, if an accused can "allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act,"[6] he may withdraw a guilty plea.

---

[3] *Id.,* ¶¶ 43–44.

[4] *See, e.g.,* majority op., ¶ 26 ("Under *Broce,* if a court cannot determine, based on the record, whether there is a double jeopardy violation, a guilty plea will relinquish a defendant's opportunity to have her double jeopardy claim resolved on the merits."); ¶ 30 ("These admissions necessarily entail that a defendant relinquishes her opportunity to receive a factual hearing on a fact-intensive unit-of-prosecution claim after pleading guilty."); ¶ 34 ("A guilty plea waives a multiplicity claim anytime the claim cannot be resolved on the record . . . ."); ¶ 39 ("[B]y entering a guilty plea, a defendant relinquishes the opportunity to receive a fact-finding hearing on a double jeopardy claim.").

[5] 5 Wayne R. LaFave, et al., *Criminal Procedure* § 21.6(a), at 230–32 (2d ed. 1999).

[6] 5 LaFave, *supra* note 5, § 21.6(a), at 230–31 (quoting *McMann v. Richardson,* 397 U.S. 759, 774 (1970)).

¶ 57. As the majority opinion points out, this conclusion is required because a guilty plea waives an accused's right to put on evidence at a trial; it does not waive the accused's Sixth Amendment right to counsel or Fourteenth Amendment right to due process.[7]

¶ 58. When an accused makes a motion properly alleging that he was denied effective assistance of counsel or the plea was not knowing, voluntary, and intelligent because he was not informed of the availability of a double jeopardy claim, he may be entitled to an evidentiary hearing even though the record supports multiple counts. Nothing in the majority opinion forecloses an evidentiary hearing in all circumstances, nor should it.[8]

## II

¶ 59. The contention in the majority opinion that a different forfeiture rule would result in gamesmanship by an accused is misguided.[9] To be sure, gamesmanship is to be discouraged. However, the rule

---

[7] *See* majority op., ¶ 43.

Courts have held that by pleading guilty, an accused does not forfeit certain constitutional defenses, including the Sixth Amendment right to a speedy trial, the right not to be convicted of conduct that cannot constitutionally be made criminal, and the right not to be selectively prosecuted in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* 5 LaFave, *supra* note 5, § 21.6(a), at 228, and cases cited therein.

[8] *Cf. United States v. Broce,* 488 U.S. 563, 574 (quoting *Mabry v. Johnson,* 467 U.S. 504, 508 (1984)) (" 'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.' That principle controls here. Respondents have not called into question the voluntary and intelligent character of their pleas, and therefore are not entitled to the collateral relief they seek.").

[9] *See* majority op., ¶ 40.

adopted in the instant case does not target any game an accused is likely to play. Certainly, the instant case is not an example of such gamesmanship.

¶ 60. An accused who pleads guilty and then later moves to withdraw the plea on double jeopardy grounds does not "receive the benefit of a guilty plea and a trial," as the majority opinion contends.[10] Even if the defendant wins the "small trial"[11] on the motion, the best the defendant can hope for is to be allowed to withdraw the guilty plea, which terminates the plea agreement.[12]

¶ 61. In the instant case, the result would be that, were the defendant permitted to withdraw her guilty plea, the State would be able to charge her with the

---

[10] *Id.,* ¶ 41.

[11] *Id.*

[12] *See State v. Robinson,* 2002 WI 9, ¶ 57, 249 Wis. 2d 553, 638 N.W.2d 564 ("[W]e conclude that when the defendant repudiated the negotiated plea agreement on the ground that it contained multiplicitous counts, the defendant materially and substantially breached the plea agreement. We further conclude that when an accused successfully challenges a plea to and a conviction on one count of a two-count information on grounds of double jeopardy and the information has been amended pursuant to a negotiated plea agreement by which the State made charging concessions, ordinarily the remedy is to reverse the convictions and sentences, to vacate the plea agreement, and to reinstate the original information so that the parties are restored to their positions prior to the negotiated plea agreement. We also conclude, however, that under some circumstances this remedy might not be appropriate."); *State v. Morris,* 108 Wis. 2d 282, 290, 322 N.W.2d 264 (1982) (defendant convicted of two crimes; supreme court held that one of convictions was only an enhancer and remanded "to the circuit court with instructions to enter judgment against the defendant on the single offense of armed robbery while concealing identity and to resentence the defendant.").

crimes for which it promised not to charge her under the negotiated plea. The defendant would not get the benefit of the plea bargain. A different rule would create no incentive for gamesmanship.

### III

¶ 62. Finally, courts and litigants should be more careful in their use of the word "waiver." As the majority opinion explains, "waiver" in the context of the instant case does not refer to the intentional relinquishment of a known right.[13] It would be more precise if courts and litigants would use the word "forfeiture."[14] Notwithstanding its recognition of this distinction, the majority opinion unfortunately continues to use the language of waiver.

¶ 63. Using "forfeiture" to describe situations where a right is given up because it is not asserted would help delineate between two distinct issues, waiver and forfeiture, that may require different analysis.

¶ 64. For the reasons set forth, I write separately.

¶ 65. LOUIS B. BUTLER, JR., J. (*concurring*). We took this case to decide whether an otherwise satisfactory guilty plea is sufficient to relinquish a double jeopardy/multiplicity challenge upon direct appeal. The majority concludes that a guilty plea relinquishes the right to assert such a claim when that claim cannot be ascertained on the record. Majority op., ¶ 2. The majority further adopts for direct appeals the *Broce*[1] rule

---

[13] Majority op., ¶ 18 n.11.

[14] *See* 5 LaFave, *supra* note 5, § 21.6(a), at 224–25.

[1] *United States v. Broce,* 488 U.S. 563, 576 (1989).

on collateral attacks, holding that a defendant who enters a knowing, intelligent, and voluntary guilty plea gives up the right to a fact-finding hearing on the propriety of multiple charges. *Id.; United States v. Broce,* 488 U.S. 563, 576 (1989). I write separately because I would not apply a rule designed for collateral attacks to direct appeals.

¶ 66. Of concern is the broad rule that the majority adopts that would apparently preclude the defendant from ever having an evidentiary hearing as part of a direct appeal in pursuing a motion to withdraw a guilty plea on double jeopardy grounds. The majority concludes that "[w]hen a defendant enters a knowing, intelligent, and voluntary guilty plea, the nature and effect of the plea *necessarily*[2] mean that the defendant gives up the right to a *fact-finding*[3] hearing on the propriety of multiple charges." Majority op., ¶ 2 (citing *Broce,* 488 U.S. at 576). Yet, whether the plea was knowing, intelligent, and voluntary would necessarily have to be determined by a fact-finding hearing.

¶ 67. The majority does indicate that a defendant may seek to withdraw a guilty plea if (1) the plea is not knowing, intelligent, and voluntary, or (2) the defendant received ineffective assistance of counsel in deciding to enter a plea. *Id.,* ¶¶ 3, 43. Yet, in application, the majority[4] would limit plea withdrawals based on double jeopardy violations to record reviews, notwithstanding the fact that allegations of double jeopardy "will often depend on facts outside the record." *See State v. Hampton,* 2004 WI 107, ¶ 61, 274 Wis. 2d 379, 683 N.W.2d 14.

---

[2] Emphasis added.

[3] Emphasis in original.

[4] Majority op., ¶¶ 46–51.

¶ 68. I also submit that the majority appears to misunderstand the underpinnings of the *Broce* decision, and therefore mistakenly and unnecessarily applies a rule for collateral attacks to direct appeals. I start by discussing the general rule established in *Broce.* The court wrote that:

> [W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and plea, as a general rule, foreclose *the collateral attack.* There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence.

*Broce,* 488 U.S. at 569 (emphasis added).

¶ 69. In discussing the source of the rule, the Court noted that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 572. (citing *Brady v. United States,* 397 U.S. 742, 757 (1970) (eight year delay between guilty plea and habeas corpus action to withdraw guilty plea). The Court further stated "a counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his confession." *Id.* (citing *McMann v. Richardson,* 397 U.S. 759, 770 (1970)). In citing another habeas corpus action in support of its reasoning, the Court stated "[t]he collateral challenge was foreclosed by the earlier guilty plea." *Id.* at 573 (citing *Tollett v. Henderson,* 411 U.S. 258, 266–67 (1973)). The Court summarized its understanding of the general rule as follows:

97

"[I]t is well settled that a voluntary plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." That principle controls here. Respondents have not called into question the voluntary and intelligent character of their pleas, and therefore are not entitled to *the collateral relief they seek.*

*Id.* at 574 (citing *Mabry v. Johnson,* 467 U.S. 504, 508 (1984) (emphasis added)).

¶ 70.　The Court recognized that there were exceptions to the general rule barring collateral attack on a guilty plea. *Id.* (citing *Blackledge v. Perry,* 417 U.S. 21 (1974), and *Menna v. New York,* 423 U.S. 61 (1975)). Those exceptions include where "the constitutional infirmity in the proceedings lay in the State's power to bring any indictment at all[,]" or where "the indictment was facially duplicative of the earlier offense of which the defendant had been convicted and sentenced. . . ." *Id.* at 575–76. When those exceptions were presented, they were resolved without any need to venture beyond the record. *Id.* at 575.

¶ 71.　I view these exceptions as not taking away from the general rule's premise that would allow a defendant to challenge whether a plea was knowing and voluntary. To the extent that bringing such a challenge during a direct appeal requires going out of the record, I do not view *Broce* as providing any such limitation.

¶ 72.　Such an interpretation is entirely consistent with the United States Supreme Court's approach that treats direct appeals very differently than collateral attacks to a judgment of conviction. *See Stone v. Powell,* 428 U.S. 465, 489–96 (1976); *see also Brecht v. Abrahamson,* 507 U.S. 619, 633–34 (1993) ("The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence. . . . (Ha-

beas corpus is designed to guard against extreme malfunctions in the state criminal justice systems). Accordingly, it hardly bears repeating that 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.' ") (quotations and citations omitted). Thus, a record review would appear to be perfectly appropriate where one has already exhausted or foregone one's appeal rights, as contrasted with one who was still developing an appellate record. In the latter situation, a defendant ought to be able to show that a guilty plea was not knowing or voluntary, or that defense counsel was ineffective, even if it means going outside the record.

¶ 73. For the foregoing reasons, I respectfully concur.

¶ 74. I am authorized to state that Justice ANN WALSH BRADLEY joins this concurring opinion.