COURT OF APPEALS
DECISION
DATED AND FILED

May 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2439-CR**

Cir. Ct. No. **2016CF504**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BILL YANG,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: JOHN ZAKOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bill Yang appeals a judgment convicting him of fifteen drug-related felonies, five counts of felony bail jumping, and two felony

counts of possession of a firearm by a felon. Yang contends the circuit court erred by denying his motions: (1) to suppress evidence law enforcement obtained from an automobile dealership that serviced his car and also from a GPS locator after it was maintained by law enforcement at the dealership; (2) to exclude on Confrontation Clause grounds out-of-court statements made by a deceased co-defendant; and (3) to have the judge recuse himself at sentencing on due process grounds. We conclude the circuit court properly denied Yang's suppression motion; Yang forfeited the right to raise a Confrontation Clause claim on appeal by entering no-contest pleas; and Yang has failed to develop a coherent argument regarding judicial disqualification. Therefore, we affirm the judgment of conviction.

## BACKGROUND

¶2    The charges in this case arose from a months-long investigation of a drug trafficking organization in Brown County that was distributing large amounts of methamphetamine and marijuana, as well as smaller amounts of heroin, cocaine, ecstasy, psilocybin, and prescription pills. Through a combination of information from confidential informants, controlled drug buys, surveillance, wiretaps and search warrants, the Brown County Drug Task Force obtained substantial evidence that Yang was the leader of the drug trafficking operation. Yang eventually pleaded no contest to twenty-two of fifty-one charges the State brought against him in exchange for the dismissal of the rest of the charges. Because the probable cause portion of the complaint was partially sealed to protect confidential informants, we limit our discussion of the evidence to that which is relevant to the three motions that are at issue on this appeal.

¶3 As to the suppression motion, a Brown County circuit court judge signed an order on November 9, 2015, for the placement of a GPS tracking device on a vehicle that Yang was known to drive. The warrant authorized the performance of maintenance on the GPS unit in any "public place."

¶4 On November 13, 2015, data from the GPS unit indicated that Yang's vehicle was located at the Gandrud Chevrolet car dealership. Based on additional information from a "trap and trace" on Yang's telephone, investigating officers from the Brown County Drug Task Force determined that Yang had left his vehicle at Gandrud for servicing while he himself was in a different location.

¶5 One of the task force officers contacted a Gandrud employee whom he knew personally, who confirmed that Yang's vehicle was there and currently on a lift being inspected. The officer asked the employee to contact him when any person returned to Gandrud to pay for the service to Yang's vehicle and to have the cashier set aside any money used to pay for the service. Shortly thereafter, task force officers arrived at Gandrud and were granted access to a work bay where Yang's vehicle was still being serviced on the lift. One of the officers performed maintenance on the GPS unit without adjusting the lift or otherwise manipulating the vehicle.

¶6 Later that day, a Gandrud employee notified a task force officer that service to the vehicle had been paid for with about $2000 in cash. Task force officers then returned to Gandrud and were allowed to inspect the cash with which Yang had paid in a secured room, outside the presence of any Gandrud employees. The officers were able to identify $500 in recorded bills that had been used in a controlled drug buy the day before.

3

¶7     Yang moved to suppress the currency and any evidence derived from the GPS locator after maintenance had been performed on it at the car dealership.   He argued that the segregation and separation of the currency constituted an impermissible joint endeavor between law enforcement and a private party, while the officers' entry into the service area at the car dealership to maintain the GPS unit exceeded the scope of the GPS warrant, in addition to being a joint endeavor.   The circuit court rejected Yang's arguments and denied the suppression motion, as well as a subsequent motion for reconsideration.

¶8     Regarding the Confrontation Clause issue, Yang filed a motion in limine seeking to exclude any testimony that could not be subjected to cross-examination.   Specifically, Yang argued that there should be no testimony or reference at trial to any "conversations or interrogations pertaining to Jeffery Tarkowski," a co-defendant and confidential informant who had died while the case against Yang was pending.   The circuit court granted the motion with respect to any testimonial statements Tarkowski had made to law enforcement that had not been subjected to cross-examination, but it denied the motion with respect to any statements Tarkowski had made to other co-conspirators during any conspiracy-related activity.

¶9     Concerning recusal, Yang filed a motion seeking to "exclude" Judge John Zakowski from the sentencing proceedings on due process grounds. Yang claimed that a former local rule calling for the so-called "vertical prosecution" of all criminal cases by a specific prosecutor in front of the same judge conflicted with another local rule calling for the random assignment of cases to judges, and violated his right to due process by exposing the judge to additional facts about the defendant from related cases.   The circuit court observed that the vertical prosecution system has been accepted in various places across the country,

4

not to mention one-judge counties in Wisconsin, and it was subject to the right of substitution—which Yang did not exercise here. The court concluded that the system did not violate Yang's due process rights because the court could have considered the same information from companion cases under the standard sentencing factors, regardless of whether it presided over those cases.

¶10 Yang now appeals. He again raises each of these three issues, which we address in turn.

## DISCUSSION

### I. Suppression Motion

¶11 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2017-18);[1] *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. However, we independently determine whether the facts found by the circuit court satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

¶12 The Fourth Amendment to the United States Constitution protects an individual's right to be free from unreasonable searches by government officials. *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. Fourth Amendment protections also extend to actions undertaken by private individuals or entities in a "joint endeavor" with law enforcement. *State v. Payano-Roman*, 2006 WI 47, ¶19, 290 Wis. 2d 380, 714 N.W.2d 548.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶13     The test for determining whether an individual has the capacity, or standing, to raise a Fourth Amendment issue "depends … upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (citation omitted).  A legitimate expectation of privacy is one that "society is prepared to recognize as 'reasonable.'" *Id.* at 95-96 (citations omitted).

¶14     Yang first contends that task force officers improperly "initiated several requests for information" from a Gandrud employee.  Specifically, Yang asserts the officers could not have learned that Yang's vehicle was going to be on a lift at the car dealership or that Yang himself was not at the dealership without the assistance of an employee who disseminated "private" customer information, in possible violation of company policy.

¶15     This contention is flawed in multiple respects.  To begin, it ignores the fact that the police were aware of both the vehicle's location and Yang's location from the GPS unit and cell phone tracking prior to any contact with Gandrud employees.[2]  Moreover, Yang provides no citation to legal authority in support of the proposition that he has a protected privacy interest in the location of a vehicle on a commercial property open to the public.  Whether such information

---

[2] Yang appears to argue for the first time on appeal that the police were not authorized to track his cell phone location in real time.  Any such argument is forfeited because Yang did not raise it in his suppression motion in the circuit court. *See Schonscheck v. Paccar, Inc.,* 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476 (observing this court will not "blindside trial courts with reversals based on theories which did not originate in their forum").

could be disseminated in accordance with Gandrud company policy[3] is not dispositive of whether that information was constitutionally protected.

¶16 It is well established that Fourth Amendment protection does not extend to "[w]hat a person knowingly exposes to the public." *Katz v. United States*, 389 U.S. 347, 351 (1967). Here, the circuit court made a factual finding that "it is not uncommon for members of the public to be present in the service area inspecting their vehicles that have been or are being serviced." That finding is not clearly erroneous. We further note that Yang had no control over how his car would be positioned during servicing and had no right to exclude others from the service area while his car was being serviced. We conclude that Yang had no protectable privacy interest in information about the location or position of his vehicle while it was at the car dealership. It follows that the Gandrud employee did not violate Yang's Fourth Amendment rights by conveying that information to law enforcement.

¶17 Yang next argues that the maintenance a task force officer performed on the GPS unit while Yang's vehicle was on the lift exceeded the scope of the GPS warrant, which limited such maintenance to being performed in public places. However, the circuit court's finding that the service area of the car dealership was open to members of the public also defeats this argument.

---

[3] Yang points to a section of the Gandrud Auto Group Employee Handbook entitled "Information Safeguard Program," which provides Gandrud "does not sell or share any of our employee or customer information" with anyone other than specified partners. In context, it appears this provision refers to customer data such as credit card information stored in the company's computer system, and would not encompass information about the location of a customer's car in a service bay open to the public. In any event, Yang did not present any evidence that he was aware of the employee handbook or its provisions regarding customer information prior to leaving his car at Gandrud for servicing, so the handbook is not relevant to Yang's expectation of privacy.

¶18    Finally, Yang challenges the segregation and examination of the money he used to pay for the servicing of his vehicle. Once Yang passed the bills over to Gandrud, however, any possible protectable privacy interest in those bills transferred to Gandrud. In short, Yang has no standing to raise this issue. We conclude the circuit court properly denied Yang's suppression motion.

## II.  Confrontation Clause Motion

¶19    As a general rule, the entry of a valid no-contest plea forfeits "all nonjurisdictional defects, including constitutional claims."[4] *State v. Kelty*, 2006 WI 101, ¶18 and n.11, 294 Wis. 2d 62, 716 N.W.2d 886. There is a statutory exception to the guilty-plea rule that allows a defendant to appeal "[a]n order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant." *See* WIS. STAT. § 971.31(10).

¶20    Yang attempts to invoke WIS. STAT. § 971.31(10) to avoid the application of the forfeiture rule to his Confrontation Clause claim. The statute is inapplicable here, however, because the challenged statements were not made by Yang and were not the subject of a suppression motion alleging that they had been obtained in violation of Yang's constitutional rights. Rather, they were the subject of a ruling on the admissibility of testimony. We conclude that Yang forfeited the right to challenge any such evidentiary decision when he pleaded no contest.

---

[4] As noted in *Kelty* we have traditionally referred to this rule as the "guilty-plea waiver rule." That reference, however, does not fully accord with the current nomenclature, which limits the use of the term "waiver" to the intentional relinquishment of a known right. *State v. Kelty*, 2006 WI 101, ¶18 and n.11, 294 Wis. 2d 62, 716 N.W.2d 886. We therefore use the more accurate term "forfeiture."

¶21     Moreover, even if Yang had not forfeited his Confrontation Clause argument, we note that he has failed to develop it. In particular, Yang has not identified what statements Tarkowski made to other co-conspirators that Yang contends should have been excluded, much less explained how those particular statements could be categorized as testimonial in nature. This court "cannot serve as both advocate and judge." *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We will not scour the record to develop viable, fact-supported legal theories on the appellant's behalf. *State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999).

## III. Recusal Motion

¶22     Yang has also failed to develop his final argument that Judge Zakowski violated his due process rights by refusing to recuse himself at sentencing. Due process affords a defendant the rights to be sentenced by an impartial judge and based upon accurate information. *See State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385 (discussing judicial bias); *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1 (discussing inaccurate sentencing information). However, Yang has made no specific allegation that the judge in this case was either subjectively or objectively biased against him. Nor has he alleged that any of the information upon which he was sentenced was inaccurate.

¶23     Yang's claim appears to be premised on the proposition that a defendant has a due process right to be sentenced by a judge who has not presided over related cases. However, he offers no supporting authority. As the State points out, defendants in related cases are routinely sentenced by the same court, especially in one-judge counties. We shall therefore not further address the issue.

9

*See Pettit*, 171 Wis. 2d at 646 (arguments unsupported by references to legal authority will not be considered).

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.