STATE of Wisconsin, Plaintiff-Respondent,

v.

Wallace I. STENZEL, Defendant-Appellant.

Court of Appeals

*No. 03–2974–CR. Submitted on briefs June 2, 2004.—Decided August 11, 2004.*

2004 WI App 181

(Also reported in 688 N.W.2d 20.)

225

227

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martin E. Kohler* and *Donald J. Chewning* of *Kohler & Hart, LLP*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J.  Wallace I. Stenzel challenges the fourteen-year sentence imposed after his conviction on two counts of homicide by intoxicated use of a vehicle and one count of injury by intoxicated use of a vehicle. He asserts that the circuit court erroneously exercised its sentencing discretion by placing too much weight on the gravity of the offense and ignoring the many positive attributes of his seventy-eight years as a productive member of society. We conclude that the circuit court properly exercised its sentencing discretion when it assigned weight to what it concluded were the relevant sentencing factors; therefore, we affirm.

¶ 2.  On January 25, 2002, Stenzel, who was seventy-seven years old, had lunch with friends at a yacht club and, as was his habit, he had two alcoholic drinks. After lunch, he headed home to Thiensville on I-43. Short of his destination, he crossed the median into the southbound lanes and struck a car being driven by Kathryn Szeflinski in which her two children, Jake, born January 27, 1997, and Lauren, born August 11, 2001, were riding in safety seats. Regrettably, Jake and Lauren died as the result of injuries sustained in the accident. Their mother survived her injuries.

¶ 3.  Stenzel was charged with multiple counts:  two counts of homicide by intoxicated use of a vehicle, WIS. STAT. §§ 940.09(1)(a) and 939.50(3)(b) (2001–02)[1]; two counts of homicide by intoxicated use of a vehicle, prohibited alcohol concentration, §§ 940.09(1)(b) and 939.50(3)(b); one count of causing injury by intoxicated use of a vehicle, WIS. STAT.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

§§ 346.63(2)(a)1 and 346.65(3m); and, one count of causing injury by operating a vehicle with a prohibited alcohol concentration, §§ 346.63(2)(a)2 and 346.65(3m). On October 8, 2002, Stenzel entered no contest pleas to two counts of homicide by intoxicated use of a vehicle and the count for causing injury by intoxicated use of a vehicle. In exchange for his plea, the State agreed that at sentencing it would argue the facts but not make a specific sentencing recommendation.

¶ 4.  Stenzel was seventy-eight years old at the sentencing on January 2, 2003. The circuit court had the benefit of presentence investigation reports prepared by the State and Stenzel's counsel. True to the plea agreement, the State did not make any specific sentencing recommendation but did offer a detailed recitation of the facts of the fatal accident. The court also heard statements by the parents of the deceased children, argument from Stenzel's counsel, and a statement by Stenzel. On each count of homicide by intoxicated use of a vehicle, the court imposed four years of confinement in prison, to be served consecutively. The court imposed six years of extended supervision on those convictions. And on the count of causing injury by intoxicated use of a vehicle, the court imposed a concurrent one-year term in the county jail.

¶ 5.  Stenzel pursued postconviction relief in the form of a motion for resentencing.[2] The heart of the motion was his contention that because of his age—seventy-eight years old at sentencing—the eight years of initial confinement was virtually a life sentence. He

_____

[2] Technically, Stenzel is seeking a modification of a sentence imposed by an erroneous exercise of discretion; resentencing is only available if the initial sentence is vacated because it was illegally imposed. *See State v. Carter*, 208 Wis. 2d 142, 146–47, 560 N.W.2d 256 (1997).

contended that the court erroneously exercised its discretion by placing too much emphasis on the seriousness of the offense, the sentence was unduly harsh and unconscionable, and the sentence constituted cruel and unusual punishment. The circuit court denied Stenzel's motion and on appeal he raises the same arguments.

¶ 6. In *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, the Wisconsin Supreme Court revisited the seminal case in sentencing jurisprudence, *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971):

> Now, in the wake of truth-in-sentencing legislation, we reinvigorate the *McCleary* directive that the exercise of sentencing discretion must be set forth on the record. Although we do not change the appellate standard of review, appellate courts are required to more closely scrutinize the record to ensure that discretion was in fact exercised and the basis of that exercise of discretion [is] set forth.

*Gallion*, 270 Wis. 2d 535, ¶ 4 (citation omitted).

■■■

¶ 7. The appellate standard of review is limited to determining if the sentencing court erroneously exercised its sentencing discretion. *Id.*, ¶ 17. "When discretion is exercised on the basis of clearly irrelevant or improper factors, there is an erroneous exercise of discretion." *Id.* When the exercise of discretion has been demonstrated, we follow a consistent and strong policy against interference with the discretion of the trial court in passing sentence: "[S]entencing decisions of the circuit court are generally afforded a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and de-

meanor of the convicted defendant." *Id.*, ¶ 18 (citation omitted). The "sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." *Id.*, ¶ 23 (citation omitted).

¶ 8.   In *Gallion*, the supreme court reaffirmed the core concepts of *McCleary*, that to properly exercise its discretion, a circuit court must provide a rational and explainable basis for the sentence. *Gallion*, 270 Wis. 2d 535, ¶¶ 22, 39. It must specify the objectives of the sentence on the record, which include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence of others. *Id.*, ¶ 40. It must identify the general objectives of greatest importance, which may vary from case to case. *Id.*, ¶ 41. The circuit court must also describe the facts relevant to the sentencing objectives and explain, in light of these facts, why the particular component parts of the sentence imposed advance the specified objectives. *Id.*, ¶ 42. Similarly, it must identify the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the sentencing decision. *Id.*, ¶ 43. *Gallion* unmistakably requires that "[w]hat has previously been satisfied with implied rationale must now be set forth on the record." *Id.*, ¶ 38.

> In short, we require that the court, by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion.

*Id.*, ¶ 46.

¶ 9. While *Gallion* revitalizes sentencing jurisprudence, it does not make any momentous changes. The weight to be given each factor is still a determination particularly within the wide discretion of the sentencing judge. *Anderson v. State*, 76 Wis. 2d 361, 364, 251 N.W.2d 768 (1977). Moreover, when we review a sentence, we still look to the entire record, including any postconviction proceedings and to the totality of the court's remarks. *See State v. Santana*, 220 Wis. 2d 674, 683, 584 N.W.2d 151 (Ct. App. 1998) ("The transcripts of the sentencing hearing as well as several postconviction hearings make an extensive record of the trial court's comments at sentencing and its explanation for what was considered."). Having been reinvigorated, we now turn to Stenzel's arguments.

¶ 10. Stenzel faults the circuit court for placing too much weight on one of the three mandatory sentencing factors—the gravity of the offense—and ignoring the significant positive factors weighing in his favor. He maintains that his "[a]ge may be the most significant factor not adequately considered by the circuit court." He argues that considering his age of seventy-eight years, a sentence of eight years of initial confinement is a de facto life sentence. Stenzel asserts:

> Age of the defendant is critical for many reasons. Any sentence is more harsh to an older person such as Stenzel because it condemns him to spend a greater percentage of his remaining life in prison. Thus, the circuit court's sentencing decision should account for the limited number of years Stenzel has left to live. Additionally, the toll of incarceration will be greater on someone of his age. The elderly are physically and psychologically less able to cope with the stress caused

by incarceration. Finally, from a societal standpoint, little can be gained by warehousing elderly inmates. At a certain point, the inmate will need care such as that provided by a nursing home. The state prison system is ill-equipped to provide that care. This is to say nothing of the monetary cost to society. Ultimately, the question must arise as to why the State is incarcerating those too frail to either commit more crimes or pose a danger to anyone. (Citations omitted.)

¶ 11.   Stenzel contends that the court erroneously exercised its discretion in not giving sufficient weight to his age as a mitigating factor and in not finding his life expectancy to be relevant. He faults the court for using this case to deliver a message to the community about the very real dangers of drinking and driving. He asserts that "the wrong message was sent:  the message that the justice system inflexibly exerts retribution upon even those members of society, such as Stenzel, who deserve its leniency." Finally, he claims that the sentence imposed was unduly harsh and unconscionable because it is likely he will not survive the sentence imposed.

¶ 12.   We agree with Stenzel that his age is a factor that the circuit court may consider as an aggravating or mitigating factor when imposing sentence. *See Gallion*, 270 Wis. 2d 535, ¶ 43 n.11. In this case, the court did consider Stenzel's age. It started its sentencing comments by recognizing that Stenzel had "a long history of being a productive and abiding member of our society." At the postconviction hearing, the court again commented that "I don't think I'll see a defendant in my lifetime who has led such an outstanding life . . . ." The court also took Stenzel's age into consideration when it

234

concluded that he had few rehabilitative needs and posed a low risk of reoffending.

¶ 13.    However, the court did not place any weight on Stenzel's age because it concluded that the gravity of the offense was enormous. It explained at the postconviction hearing that at sentencing it was required to balance Stenzel's exemplary life against the gravity of the offense. The court struck a proper balance at sentencing. It observed that the two children were innocent victims who were passengers in safety seats in the rear of their mother's car when the car driven by Stenzel crossed the median and slammed into their car. The court stated that Stenzel's act of driving after drinking was a volitional act and the deaths of the two children could have been avoided. The court included in the gravity of the offense the impact on the parents and on society, which lost two young children with their entire lives before them and lost Stenzel, who had been a productive member of society. The court also stated that because efforts at curbing drunk driving had not succeeded, it was necessary to send a message to the public that deaths caused by intoxicated drivers would be severely punished.

¶ 14.    The circuit court was correct in its assessment of the gravity of the offense. In 1957, the United States Supreme Court commented that the increasing slaughter on our highways perpetrated by drunk drivers "now reaches the astounding figures only heard of on the battlefield." *Breithaupt v. Abram*, 352 U.S. 432, 439 (1957). The most recent statistics available show that nationally there were an estimated 258,000 injuries and 17,419 fatalities in alcohol-related crashes in 2002; that is the equivalent of one alcohol-related

fatality every thirty minutes.[3] NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEP'T OF TRANSP., DOT HS 809 606, TRAFFIC SAFETY FACTS 2002, at 1 (2002).

¶ 15.   The Wisconsin Supreme Court has also recognized the drunk driving plague:

> Drunk driving is indiscriminate in the personal tragedy of death, injury, and suffering it levies on its victims. It may transform an innocent user of a highway into a victim at any time—with no advance notice and no opportunity to be heard. It is a tragedy where the intoxicated driver and the victim are often unwittingly the same person.

> It is also a scourge on society:   drunk driving exacts a heavy toll in terms of increased health care and insurance costs, diminished economic resources, and lost worker productivity. It is an affliction which produces no offsetting human or economic benefits; it engenders no positive human or economic incentive. It destroys and demoralizes personal lives and shocks society's conscience. It has no legitimate place in our society.

*State v. Nordness*, 128 Wis. 2d 15, 33–34, 381 N.W.2d 300 (1986). In Wisconsin, the carnage is just as shocking as it is nationally:   292 fatalities and 6570 injuries in 2002—a death or injury every seventy-seven minutes. WIS. DEP'T OF TRANSP., 2002 WISCONSIN ALCOHOL TRAFFIC FACTS, at iv, 2 (Feb. 2004).[4]

---

[3] The highest annual fatality toll during the Vietnam conflict was 14,594 American military combat-related fatalities in 1968. CYBER SARGES, VIETNAM WAR CASUALTIES—US VS. NVA/VC, http://cybersarges.tripod.com/casualties.html (last visited Aug. 4, 2004).

[4] The heavy financial toll drunk driving exacts, *State v. Nordness*, 128 Wis. 2d 15, 33–34, 381 N.W.2d 300 (1986), has

¶ 16.  We conclude that the circuit court appropriately exercised its discretion when it did not give Stenzel's age the overriding and mitigating significance that he would have preferred.[5] It remains within the discretion of the circuit court to discuss only those factors it believes are relevant, *State v. Wickstrom*, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984), and the weight that is attached to a relevant factor in sentencing is also within the wide discretion of the sentencing court. *State v. Perez*, 170 Wis. 2d 130, 143, 487 N.W.2d 630 (Ct. App. 1992). The circuit court explicitly linked the sentence imposed to the gravity of the offense and the need to send a message to the public. *See Gallion*, 270 Wis. 2d 535, ¶ 46. It was permissible for the court to impose a stiff sentence to

---

been estimated by the National Safety Council to be $1,090,000 for each death and $39,900 for each disabling injury. "The calculable costs of motor-vehicle crashes are wage and productivity losses, medical expenses, administrative expenses, motor vehicle damage, and employer costs." NAT'L SAFETY COUNCIL, ESTIMATING THE COSTS OF UNINTENTIONAL INJURIES 2002, at 1 (2002). In Wisconsin, the economic cost of alcohol-related deaths and injuries in 2002 was in excess of $580,000,000.

[5] In *State v. Thompson*, 172 Wis. 2d 257, 265, 493 N.W.2d 729 (Ct. App. 1992), we addressed an argument that the circuit court erred when it did not consider the defendant's positive attributes:

> There is an old adage that to whom much is given, much is expected. *See Luke* 12:48 (New King James). Here, the trial court recognized that despite Thompson's lack of a prior criminal record, and his education and employment history, Thompson, nevertheless, committed a serious offense that resulted in the death of another human being. The trial court's conclusion that Thompson's conduct was especially egregious when viewed in light of his "laudable background," is not "unreasonable or unjustifiable." (Citation omitted.)

emphasize society's concern with the gravity of the offense. *Roehl v. State*, 77 Wis. 2d 398, 420, 253 N.W.2d 210 (1977). Similarly, in sending a message to the public that a death caused by intoxicated use of a vehicle would be dealt with harshly, the circuit court was appropriately considering the deterrence effect of the sentence. *See Harris v. State*, 78 Wis. 2d 357, 370, 254 N.W.2d 291 (1977).

¶ 17.  Stenzel faults the court for not assigning any relevancy to his life expectancy. He argues that he was seventy-eight years old at the sentencing and the eight years of initial confinement is very close to the 10.4 years of his life expectancy, thus, virtually guaranteeing that he will serve a life sentence. We repeat that it is within the discretion of the circuit court to determine what is relevant to the sentence. *Perez*, 170 Wis. 2d at 143. Generally, courts that have addressed similar arguments have not been inclined to consider life expectancy as a relevant factor in sentencing. *See* Cristina J. Pertierra, Note and Comment, *Do The Crime, Do The Time: Should Elderly Criminals Receive Proportionate Sentences?* 19 NOVA L. REV. 793, 812–818 (1995) (collecting cases).

¶ 18.  Several cases illustrate the approach other courts have taken. In *Palermo v. United States*, 182 F.3d 922 (7th Cir. June 17, 1999) (unpublished order),[6] the

---

[6] WISCONSIN STAT. RULE 809.23(3) does not prohibit us from citing unpublished opinions from other jurisdictions. *Predick v. O'Connor*, 2003 WI App 46, ¶ 12 n.7, 260 Wis. 2d 323, 660 N.W.2d 1, *review denied*, 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (Wis. Apr. 22, 2003) (Nos. 02–0503, 02–0504), *cert denied*, 124 S. Ct. 809 (U.S. Wis. Dec. 1, 2003) (No. 03–429). And the Seventh Circuit's rule on citation of its unpublished opinions only prohibits citation of an "unpublished opinion" as

defendant claimed his trial counsel was ineffective. "In a nutshell, Palermo's claim is that he was 74 years old and in less than ideal health when he was sentenced, and his lawyer should have argued that a long term of imprisonment . . . amounted to an 'effective life sentence.' " *Id.* at 2. The Seventh Circuit rejected the argument stating, "The claim that a court must consider life expectancy in imposing sentences under statutes providing maximum penalties expressed in years is without support." *Id.* In *United States v. O'Driscoll,* 761 F.2d 589, 599 (10th Cir. 1985), another federal circuit rejected the argument that a sentence exceeding the defendant's life expectancy was improper:

> It is fundamental that punishment should be tailored to the particular criminal and not necessarily to the severity of the crime. Certainly, the sentence imposed in the case at bar was fine-tuned to the particular criminal, O'Driscoll. Rehabilitation is not the only constitutionally permissible goal of incarceration; retribution is equally permissible. (Citations omitted.)

¶ 19.  In *Alvarez v. State,* 358 So. 2d 10, 11, 12 (Fla. 1978), the Florida Supreme Court considered the certified question, "Is a sentence of imprisonment for a term of years greater than the life expectancy of the sentenced person lawful" and held:

> We reject the notion that an individual's life expectancy should be used . . . to mark the longest term which a particular defendant should serve. Any sentence, no matter how short, may eventually extend beyond the

precedent in any federal court in that circuit. 7TH CIR. R. 53(b)(2)(iv). We are citing to the opinion not for its precedential value but for its persuasive value. *State ex rel. Gendrich v. Litscher,* 2001 WI App 163, ¶ 7 n.6, 246 Wis. 2d 814, 632 N.W.2d 878.

life of a prisoner. Mortality and life expectancy are irrelevant to limitations on the terms of incarceration set by the Legislature for criminal misconduct. (Footnote omitted.)

¶ 20.   We agree with these other jurisdictions that the defendant's life expectancy, coupled with a lengthy sentence, while perhaps guaranteeing that the defendant will spend the balance of his or her life in prison, does not have to be taken into consideration by the circuit court.[7] If the circuit court chooses to consider a defendant's life expectancy, then it must explain, on the record, how the defendant's life expectancy fits into the sentencing objectives. *See Gallion*, 270 Wis. 2d 535, ¶ 46.

¶ 21.   Finally, Stenzel asserts that the court erroneously exercised its discretion because the sentence is unduly harsh and unconscionable. When a defendant argues that his or her sentence is unduly harsh or excessive, we will hold that the sentencing court erroneously exercised its discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).

---

[7] In a decision issued prior to truth-in-sentencing, the Wisconsin Supreme Court held that a circuit court was permitted to set a parole eligibility date beyond a defendant's expected lifetime. *State v. Setagord*, 211 Wis. 2d 397, 415–16, 565 N.W.2d 506 (1997).

¶ 22. We conclude that the sentence is not so excessive as to be unduly harsh and unconscionable. When Stenzel entered his no contest plea to two counts of homicide by intoxicated use of a vehicle, a Class B Felony, he faced the possibility of a total sentence of sixty years. *See* WIS. STAT. § 939.50(3)(b). The sentence of fourteen years, with eight years of initial confinement, is within the statutory limits. "A sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983). In addition, because there were two victims, making the sentences consecutive does not shock the public sentiment and make the sentences unduly harsh and unconscionable. *See State v. Hamm*, 146 Wis. 2d 130, 157, 430 N.W.2d 584 (Ct. App. 1988). Finally, considering the age of the victims and the gravity of the offenses, public sentiment supports the sentences imposed.

¶ 23. In *State v. Ramuta*, 2003 WI App 80, ¶ 25, 261 Wis. 2d 784, 661 N.W.2d 483, *review denied*, 2004 WI 78, 273 Wis. 2d 57, 681 N.W.2d 524 (2004) (No. 02–1809), we observed:

> Although we recognize that trial courts should impose " 'the minimum amount of custody' " consistent with the appropriate sentencing factors, "minimum" does not mean "exiguously minimal," that is, insufficient to accomplish the goals of the criminal justice system—each sentence must navigate the fine line between what is clearly too much time behind bars and what may not be enough. (Citation omitted.)

In this case, we conclude that the circuit court correctly navigated that fine line.

*By the Court.*—Judgment and order affirmed.