COURT OF APPEALS
DECISION
DATED AND FILED

September 6, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP103-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF2966

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

GARRY TYRONE STEWART,

    DEFENDANT-APPELLANT.

      APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. CONEN and GLENN H. YAMAHIRO, Judges. *Affirmed*.

      Before White, C.J., Donald, P.J., and Dugan, J.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Garry Tyrone Stewart appeals from a judgment of conviction following his guilty plea to one count of second-degree reckless homicide, as a party to a crime, with use of a dangerous weapon.  He also appeals from the decision and order denying his motion for postconviction relief.   On appeal, Stewart argues that the circuit court "misused its discretion" in denying his presentencing motion to withdraw his guilty plea and it "misused its discretion" in sentencing him.   Upon review, we conclude that the circuit court properly exercised its discretion in denying Stewart's motion to withdraw his plea presentencing and also properly exercised its discretion in imposing its sentence.

## BACKGROUND

¶2     In a criminal complaint filed July 2, 2016, the State charged Stewart with first-degree reckless homicide, as a party to a crime, armed robbery, as a party to a crime, and possession of a firearm by a felon, all with a habitual criminality repeater enhancer, stemming from the death of David McKay.  The criminal complaint stated that Sharon,[1] who was with McKay, said that she was returning home with her friend, McKay.  She parked the car, walked towards the front of her car, and stopped just inside her fence.  McKay was gathering some items from inside the car so he could take them in the house, so it took him longer to get out of the car.  Sharon said that when she looked back towards McKay, she saw a black male armed with a black semi-automatic handgun that he was pointing at McKay.  She stated that the black male told McKay to "give me all of your

---

[1] Pursuant to WIS. STAT. RULE 809.86 (2021-22), we refer to a victim in this matter using a pseudonym.  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

money." Sharon said that McKay told her to go into the house and call the police and as she ran inside, she heard three gun shots.

¶3     The complaint further stated that Milwaukee police officers were dispatched to the area of 60th Street in the City of Milwaukee. McKay was taken to the hospital and died as a result of his injuries. A forensic investigator processed Sharon's car because it appeared from the car that a struggle between the suspect and McKay occurred on the vehicle. The investigator recovered twelve fingerprints, of which eight were relevant to the complaint. A latent print examiner determined that eight of the twelve fingerprints were Stewart's fingerprints.

¶4     The complaint was also based on the statement of Stewart's co-defendant, Lolita Whitehead. Whitehead told police that she was with Stewart when he received a call from an individual who was in the area for a National Basketball Association draft party. Stewart got a second call during which Stewart asked, "how much" and "what is he wearing?" She stated that they waited for a while and then Stewart told her to follow a vehicle. She told police that she and Stewart followed the car until they reached the homicide location, at which point Stewart got out and Whitehead parked around the corner. Whitehead said that she heard one to two gunshots and realized that Stewart was involved in a robbery. She said that when Stewart came back to the car, he had money sticking out of his front jacket pockets and he said, "I hope he ain't dead." She also stated that when they arrived home, Stewart stayed outside, and she saw that he had a "stack of cash," which she believed was approximately $2,500. She further said that she and Stewart went to a store and bought clothes, food, and "stuff for her kids."

¶5     While the case was pending, three attorneys represented Stewart at different times. For reasons unrelated to this appeal, the first two attorneys moved to withdraw from representing Stewart. The third attorney, Marcella De Peters, represented Stewart through the time that he entered his plea on April 6, 2018. Pursuant to the plea agreement,[2] the State would file an amended information charging Stewart with second-degree reckless homicide, use of a dangerous weapon, as a party to a crime and the State would recommend a sentence of prison in an amount left to the discretion of the court, and Stewart was free to recommend whatever sentence he felt appropriate.[3]

¶6     At the plea hearing on April 6, 2018, the circuit court reviewed the plea questionnaire, addendum to the plea questionnaire, and waiver of rights form signed by Stewart. During the plea colloquy, the circuit court confirmed that Stewart understood the charges against him, including the elements of the offense and party to a crime, the maximum penalty that he faced, and that the court was not bound by anyone's recommendation and it could impose the maximum sentence, the rights that he was giving up, that he was freely and voluntarily

---

[2] The agreement was also based on Stewart providing "a completely truthful statement" about McKay's death. The State also agreed

> not to use any information furnished by [Stewart] during the interview about criminal activities outside those already charged directly against him in any civil or criminal proceedings, subject to the following conditions and exceptions. Any information provided about those crimes with which he is already charged, if the State so chooses.

[3] The amended information filed by the State did not reflect that the charge was as a party to a crime, and therefore, the State filed a second amended information with "PTAC" handwritten on it. During the plea colloquy by the circuit court, the court stated, "I'm assuming [Stewart] understands that [PTAC is being added to the information] because that's been the discussion all along of 'party to a crime,' correct, [Stewart]?" Stewart answered, "Yes[.]"

entering his plea, and that no one threatened him or promised him anything to give up his rights and enter his plea.[4]

¶7      During the plea hearing, the circuit court encouraged Stewart to ask the court questions if he did not understand anything that was being said or done. Stewart did ask the court several questions during the hearing, and the court answered those questions. De Peters provided the circuit court with the factual basis supporting the charge of second-degree reckless homicide, as a party to a crime. The factual basis, discussed in detail below, implicated another person in the armed robbery and shooting of McKay and that Stewart and Whitehead were parties to those crimes. Stewart pled guilty, and the court found him guilty and ordered entry of judgment of conviction. The matter was adjourned for sentencing on July 10, 2018.

¶8      At the hearing on July 10, 2018, the circuit court met with counsel in chambers to discuss how the case would proceed. When the case was called on the record, De Peters told the court that she was asking for an adjournment of the sentencing. The court agreed to adjourn the matter for "three weeks or so with a drop dead date at that time to file a motion to withdraw his plea if [Stewart] wants to do so." The court then clarified that "[i]f the plea is withdrawn, and I'm not saying I will allow him to withdraw his plea because it may not be allowed[.]"

¶9      The State then noted that if the court permitted Stewart to withdraw his plea, the original charges would be reinstated. The court and counsel discussed what the maximum penalties would be for those charges. Stewart then

---

[4] The facts related to the plea hearing will be discussed in greater detail below.

interjected. He expressed his dissatisfaction with his plea, De Peters, the court, and the prosecutor. He stated, "I really didn't understand that plea. She telling me something different and you telling me something different." He continued, "I didn't shoot nobody, I didn't kill nobody, I didn't rob nobody, and she knows this, and I'm getting charged like I did this." De Peters then proceeded to explain to the court how the parties agreed to the charge that Stewart pled guilty to instead of felony murder with the underlying crime being armed robbery.

¶10 Stewart then stated that "[s]he said if I say something, I can go home. I said what I said to go home." Although the circuit court expressed its disagreement with that statement, noting that it went through his plea very thoroughly and that he said no one made him any promises, it allowed Stewart to file a motion to withdraw his plea. The court also allowed De Peters to withdraw as counsel "based on the comments that were made on the record of somehow you lied to [Stewart] because now you've become a witness."

¶11 Stewart, represented by new counsel, Susan Roth, filed a motion to withdraw his plea on October 29, 2018.[5] In the motion, Stewart alleged that he did not understand the consequences of his plea. The circuit court held a hearing on Stewart's motion at which Stewart and De Peters testified. As discussed in more detail below, Stewart testified that De Peters told him that if he entered his plea, his "consequences would be five years and time served because I've been here for so long," that he didn't know that "[he was] pleading guilty to second-degree

---

[5] The Honorable Jeffrey A. Conen presided over Stewart's plea, the motion to withdraw his plea, and sentencing. The Honorable Glenn H. Yamahiro presided over Stewart's postconviction motion. We refer to Judge Conen as the circuit court and Judge Yamahiro as the postconviction court.

reckless homicide," and that "[he] thought [he] was pleading guilty to lesser charges."

¶12    By contrast, as discussed in more detail below, De Peters testified that she explained to Stewart the details of all of the offers that the State made. She also stated that she wrote him a letter that specifically listed all of the offers and her private investigator read the letter to him twice, and De Peters discussed the offers thoroughly with him. She testified that she explained the maximum penalties to Stewart many times and informed him that the judge was not bound by any recommendations. She denied ever promising Stewart he would be sentenced to five years time served.

¶13    The circuit court denied Stewart's motion to withdraw his plea. It held that Stewart did not show a fair and just reason to withdraw his plea because he did not show that he did not understand the plea agreement and the consequences of his plea. The case was then set for sentencing on February 22, 2019. On that date, the court sentenced Stewart to twenty years of imprisonment, consisting of fifteen years of initial confinement, followed by five years of extended supervision.

¶14    Stewart filed a postconviction motion on November 3, 2021, arguing that "the circuit court erred in denying [his] presentencing motion to withdraw his guilty plea because [he] presented a fair and just reason for withdrawing his plea." However, unlike his argument to the circuit court in his motion to withdraw his plea that he misunderstood the consequences of his plea, he cited to *State v. Shanks*, 152 Wis. 2d 284, 290, 448 N.W.2d 264 (Ct. App. 1989), and argued that each of the factors that the *Shanks* court stated that circuit courts should consider when addressing a motion to withdraw a plea presentencing "are arguably

7

applicable" in his case. He also cited ***McCleary v. State***, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), and ***State v. Gallion***, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, for what circuit courts must do at sentencing and then states "[d]ue to space limitations, [Stewart] asserts that the [circuit] court did none of these things at the sentencing hearing."

¶15    The postconviction court denied Stewart's motion in a written decision. It concluded that "[p]ostconviction proceedings are not the defendant's opportunity to relitigate his presentence motion for plea withdrawal, and therefore, to the extent that he did not present the foregoing arguments during the prior proceedings, they are deemed forfeited." It further stated that "[t]he [circuit] court listened to the testimony and arguments proffered in support of [Stewart's] motion for plea withdrawal and found no fair and just reason to withdraw [his] plea." The court then stated "[t]his court will not revisit that determination or entertain a claim that the [circuit] court erred in denying the motion based on arguments that were not presented to the court for its consideration[.]"

¶16    The postconviction court also rejected Stewart's argument that the circuit court "failed to comply with the sentencing dictates of ***McCleary*** and ***Gallion***." It stated that the record showed that the circuit court thoroughly and thoughtfully considered the relevant sentencing factors in the case. It also stated that Stewart did not do any analysis of the circuit court's statements during sentencing—it noted that Stewart merely stated in his motion "'due to space limitations,' [Stewart] merely asserts that the [circuit] court 'did none of these things at the sentencing hearing.'"

¶17    This appeal follows.

## DISCUSSION

**I.**   **The circuit court did not erroneously exercise its discretion in denying Stewart's motion to withdraw his presentencing plea**

*A. Standard of Review*

¶18   A circuit court's discretionary decision to grant or deny a motion to withdraw a plea before sentencing is subject to review under the erroneous exercise of discretion standard.   "All that this court need find to sustain a discretionary act is that the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."   ***State v. Jenkins***, 2007 WI 96, ¶30, 303 Wis. 2d 157, 736 N.W.2d 24 (citations omitted; one set of internal quotations omitted).   In ***State v. Canedy***, 161 Wis. 2d 565, 579, 469 N.W.2d 163 (1991) (citation omitted), our supreme court stated that it would affirm the circuit court's decision as long as it was "demonstrably … made and based upon the facts appearing in the record and in reliance on the appropriate or applicable law."

¶19   Our supreme court explained in ***Jenkins***, that "[a] 'fair and just reason' has never been precisely defined."   ***Id.***, 303 Wis. 2d 157, ¶31 (citation omitted).   "The defendant has the burden to prove by a preponderance of the evidence that he has a fair and just reason.   The reason must be something other than the desire to have a trial, or belated misgivings about the plea."   ***Id.***, ¶32 (citations omitted).   On review of the circuit court's decision, "we apply a deferential, clearly erroneous standard to the court's findings of evidentiary or historical fact.   The standard also applies to credibility determinations."   ***Id.***, ¶33 (citation omitted).   Further, "[i]n reviewing factual determinations as part of a review of discretion, we look to whether the court has examined the relevant facts and whether the court's examination is supported by the record."   ***Id.***

¶20     In *Jenkins*, our supreme court further explained that

> When there are no issues of fact or credibility in play, the question whether the defendant has offered a fair and just reason becomes a question of law that we reviewed *de novo*. To illustrate, a defendant's genuine misunderstanding of the consequences of a plea is a fair and just reason to withdraw his plea. But whether such a misunderstanding actually exists is a question of fact, and the circuit court's determination depends heavily on whether the court finds the defendant's testimony or other evidence credible and persuasive. *If the circuit court does not believe the defendant's asserted reasons for withdrawal of the plea, there is no fair and just reason to allow withdrawal of the plea.*

*Id.*, ¶34 (emphasis added; citations omitted; one set of quotations omitted).

¶21     Additionally, in *Jenkins*, the court stated that "[o]n the surface, the language and history of the fair and just reason standard suggest that a defendant is required to meet a relatively low burden to justify plea withdrawal before sentence. In actual application, however, the burden has been more difficult." *Id.*, ¶43. It went on to explain that

> Upon a motion to withdraw a plea before sentencing, the defendant faces three obstacles. First, the defendant must proffer a fair and just reason for withdrawing his plea. Not every reason will qualify as a fair and just reason. Second, the defendant must proffer a fair and just reason that the circuit court finds credible. In other words, the circuit court must believe that the defendant's proffered reason actually exists. Third, the defendant must rebut evidence of substantial prejudice to the State.
>
> If the defendant does not overcome these obstacles in the view of the circuit court, and is therefore not permitted to withdraw his plea, the defendant's burden to reverse the circuit court on appeal becomes relatively high. This is so because, on appeal, the defendant has two additional and substantial obstacles. The first obstacle is the applicable standard of review, which requires the reviewing court to affirm the circuit court's decision unless it is clearly erroneous. The second obstacle is the extensive plea colloquy required of circuit courts. The plea colloquy

is designed to secure a knowing, intelligent, and voluntary plea from the defendant and a developed record from which reviewing courts may evaluate the circuit court's decision.

*Id.*, ¶¶43-44 (citations omitted).

### B. Application of the Fair and Just Reason Standard to this case

¶22 As noted above, in his motion to withdraw his plea, Stewart's sole allegation is that "he did not understand … the actual consequences of his guilty plea," that he did not understand the plea forms "due to his academic limitations,"[6] and that he believed, based on what prior counsel told him, that "by entering his plea he would be immediately released from custody and the case would be finalized." In his motion, Stewart alleged that prior counsel, De Peters, told him that "he would be getting 'immunity' and 'going home' if he cooperated with law enforcement and plead guilty to [second-degree reckless homicide, use of a dangerous weapon, as a party to a crime]" and that "innocent people plead guilty all the time."

¶23 We conclude that Stewart did not prove that he had a fair and just reason to withdraw his plea. We begin our analysis of the record with the plea colloquy. In *Jenkins*, our supreme court explained that "[t]he plea colloquy is designed to secure a knowing, intelligent, and voluntary plea from the defendant and a developed record from which reviewing courts may evaluate the circuit court's decision." *Id.*, 303 Wis. 2d 157, ¶44. When we review the record, especially the plea colloquy and the testimony during the motion to withdraw his

---

[6] The State does not dispute that Stewart could not read or write.

11

plea, we find evidence to support a finding that Stewart did not misunderstand the consequences of his plea.

¶24    During the hearing on Stewart's plea, the record reflects that the circuit court was very thorough during the plea colloquy, explaining what was occurring. The court advised Stewart that if he had questions or did not know what was going on, he could and should ask questions of his counsel or the court. Stewart responded, "Yes, sir." In fact, Stewart did ask questions during the colloquy. When the court stated that the negotiations were that the State would recommend prison to the court and "everyone else can be free to recommend whatever they wish," Stewart responded that he did not know that everyone else would be free to speak. De Peters interjected, "Meaning 'us.' We can say what we want, not just everyone in the world." The court then stated not everyone in the world, but everyone involved in the case. Stewart responded, "Okay." The court continued, "[s]o I'll listen to what everyone has to say and I'll decide what the appropriate thing to do is. Okay?" Stewart responded, "Yes, sir."

¶25    When the court said that the maximum penalty was thirty years in prison, Stewart responded that De Peters told him that it was twenty years. The court then explained that "the maximum [prison] term is [thirty] years, and it will be divided up or could be divided up as a maximum of twenty years of initial confinement and ten years of extended supervision. Are you following me?" Stewart responded, "Yes, sir." Further, the court explained, "I don't want to lie to you and say that there's not going to be more time, if you were on [extended supervision], you get revoked, but the up-front time, the maximum up-front time is [twenty] years." Stewart responded, "Yes, sir."

¶26 The court then asked Stewart if he understood the charge and the maximum penalties that could be imposed and he responded, "yes." It asked Stewart if De Peters read him the guilty plea questionnaire and waiver of rights form and the addendum, and he responded, "yes." He stated that he understood everything on those documents. The court then went through the various rights that Stewart would be giving up by entering his plea, and Stewart stated that he understood each right that he was giving up. When the court asked him, "[h]as anyone threatened you at all or promised you anything outside of a plea agreement in this matter to give up your rights and enter your plea here today?" and Stewart stated, "No, sir."

¶27 The court then asked Stewart if he understood that the plea agreement involved a reduced charge, and he stated that he did. It then said that the reduction of the charge reduced the maximum sentence down significantly to "a maximum of [thirty] years, [twenty] years confinement and ten years extended supervision." Stewart responded, "Yes, sir."

¶28 The circuit court then discussed each of the elements of the crime of second-degree reckless homicide, use of a dangerous weapon, as a party to a crime. It thoroughly went through the jury instruction for party to a crime and conspiracy. When it asked Stewart if he understood all of that, he responded that he did. The court then specifically asked Stewart, "Does that make sense to you now?" and he stated, "yes."

¶29 The court then asked the parties to state the factual basis for Stewart's plea. De Peters advised the court that although Stewart denied shooting or robbing the victim, he did admit to having a gun, which he could not legally possess because he was a convicted felon, that he brought the gun and gave it

Whitehead's brother, Walker, who he stated robbed and shot McKay, that he was in the car when Whitehead drove Walker to the location of the robbery, and then drove Walker away after the robbery and shooting. She also advised the court that Stewart "knew he wasn't supposed to be having guns, and he knew that there was going to be some activity that was going to occur at [that location] that was for a common criminal purpose." Further, she stated, "[s]o I don't think anybody ever intended—Walker or Mr. Stewart or [Whitehead] ever intended that anybody was going to be shot or killed here. It was supposed to be a simple robbery[.]"[7]

¶30    The prosecutor stated that he agreed that De Peters' statement of the facts sufficed as a factual basis. The circuit court then asked Stewart if De Peters' statement was all correct and he answered, "Yes, sir." The court then asked Stewart if he had "any questions about anything?" and he answered, "No, sir."[8]

¶31    The circuit court then found that Stewart was "entering his plea freely, voluntarily and intelligently, with full understanding of the nature of the offense charged, the maximum possible penalties and all of the rights being given up by pleading guilty[.]" It then accepted his plea.

¶32    We conclude that the record of the plea colloquy clearly shows that Stewart understood the consequences of his plea. When the court told him that the maximum penalty for the charge was thirty years and Stewart told the court that

---

[7] De Peters further stated that scenario was borne out by the cell phone records, the cell tower records, and the investigation that she and her private investigator conducted.

[8] De Peters then told the court that she read the guilty plea questionnaire and waiver of rights forms word for word to Stewart, that he understood the rights he was giving up, that she was satisfied he was entering his plea freely, voluntarily and intelligently, that he understood the elements, the maximum penalties, and the facts, and that she believed that the facts she told to the court were an adequate factual basis for the plea.

14

De Peters told him it was only twenty years, the court clearly explained to him that the maximum sentence was thirty years of imprisonment broken down as twenty years of initial confinement and ten years of extended supervision. At that point, Stewart then told the court that he understood. Stewart also stated that no one made any promises or threats to him to get him to enter his plea. Thus, we conclude that the record shows that Stewart clearly understood the maximum consequences of his plea.

¶33 Moreover, as noted, the testimony at the hearing on Stewart's motion to withdraw his plea also supports the circuit court's finding that he did not prove a fair and just reason to withdraw his plea. As our supreme court in *Jenkins* explained, whether a defendant's assertion that he or she misunderstood the consequences of the plea "actually [] is a question of fact, and the circuit court's determination depends heavily on whether the court finds the defendant's testimony or other evidence credible and persuasive." *Id.*, 303 Wis. 2d 157, ¶34. It further stated that, "[i]f the circuit court does not believe the defendant's asserted reasons for withdrawal of the plea, there is no fair and just reason to allow withdrawal of the plea." *Id.* (citation and one set of internal quotations omitted).

¶34 First, we note that the circuit court did not explicitly state during the motion for plea withdrawal that it did not believe Stewart's assertion that he misunderstood the consequences of his plea. However, the court rejected Stewart's assertion when it stated that "[t]his court, as well as the lawyers, have bent over backwards to ensure that the record was very airtight on this and that [Stewart] understood or should have understood that he could ask questions and that if he didn't understand something we wanted him to let us know." The court noted that when Stewart stated that De Peters told him the maximum sentence was twenty years after the court said thirty years, the court explained that the

maximum term of imprisonment was thirty years, of which twenty years was the maximum initial confinement time with ten years of extended supervision. It stated that De Peters told Stewart that and that the court told him that as well.[9] The court further stated, "[s]o the court believes at this point that there is no fair and just reason to withdraw [Stewart's] plea and that the motion is denied."

¶35 Moreover, as our supreme court stated in **Jenkins**, "we must still 'independently review the record to determine whether the [circuit] court's decision can be sustained when the facts are applied to the applicable law.'" **Id.**, 303 Wis. 2d 157, ¶75 (alteration in original; citation omitted). We conclude that the circuit court implicitly found De Peters' testimony to be credible and Stewart's testimony not credible. As this court stated in **State v. Quarzenski**, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844 (citations omitted), "[t]o the extent the circuit court's conclusions are rooted in the witnesses' credibility, we will accept those determinations. If the court does not make express findings in that regard, we assume it made implicit findings on a witness's credibility when analyzing the evidence."

¶36 During his testimony at the plea withdrawal motion, Stewart testified that he thought that his consequences were going to be what De Peters told him they would be—"She basically told me that my consequences would be five years and time served because I've been in here so long." He also testified that he did not know that he was pleading guilty to second-degree reckless homicide. When counsel again asked him what his understanding was of what would happen to him

---

[9] As noted above, during the plea colloquy after the court explained that the maximum sentence was thirty years broken down as twenty years of initial confinement and ten years of extended supervision, it asked Stewart if he understood and he answered, "yes."

if he pled guilty, he answered, "[f]ive years, I would go home time served because I've been here for so long."

¶37    By contrast, De Peters testified that she never told, let alone promised, Stewart at any time that he would get five years time served, that she explained to him that the State would recommend prison up to the court, the defense could recommend whatever they wanted, the victims could recommend what they wanted, and the judge would sentence him to whatever the judge thought was appropriate. She never told Stewart that if he pled guilty he would be going home. Nor did she tell him "to just plead" because "innocent people plead guilty all the time." In fact, she testified that "I mean, he wasn't innocent. I mean, this wasn't a case where innocence was an issue."

¶38    Thus, in stating that it believed that there was no fair and just reason for Stewart to withdraw his plea, the circuit court implicitly found that De Peters was credible and Stewart was not. In other words, the circuit court did not believe that Stewart's proffered reason actually existed. "If the circuit court does not believe the defendant's asserted reasons for withdrawal of the plea, there is no fair and just reason to allow withdrawal of the plea."[10] *Jenkins*, 303 Wis. 2d 157, ¶34 (citations and internal quotations omitted).

---

[10] As noted above, although Stewart only asserted that he misunderstood the consequences of his plea, in his postconviction motion and on appeal, he argues that all of the factors identified in the *Shanks* decision "arguably" apply in this case, and therefore, he has shown a fair and just reason to withdraw his plea. However, Stewart was required to proffer his fair and just reasons at the time of his motion to withdraw his plea. *See State v. Jenkins*, 2007 WI 96, ¶71, 303 Wis. 2d 157, 736 N.W.2d 24 ("First, Jenkins did not proffer a fair and just reason at the time of his motion for plea withdrawal.").

(continued)

17

¶39 Thus, we conclude that the circuit court did not erroneously exercise its discretion in denying Stewart's presentencing motion to withdraw his plea and that the postconviction court did not err in denying Stewart's motion for postconviction relief relating to his motion to withdraw his plea.

## II. The circuit court properly exercised its discretion in sentencing Stewart

### A. Standard of Review

¶40 Sentencing lies within the circuit court's discretion, and our review is limited to determining if the circuit court erroneously exercised its discretion. *See* *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. The appellate standard of review is limited to determining if the sentencing court erroneously exercised its sentencing discretion. *Id.* When the exercise of discretion has been demonstrated on appeal, we follow "a consistent and strong policy against interference with the discretion of the trial court in passing sentence." *Id.*, ¶18 (citation omitted). "[S]entencing decisions of the circuit court are generally afforded a strong presumption of reasonability because the circuit

---

We also agree with the postconviction court's statement that "postconviction proceedings are not the defendant's opportunity to relitigate his presentence motion for plea withdrawal" and because Stewart did not raise the arguments before the circuit court at the time of his motion to withdraw his plea, the arguments "are deemed forfeited."

We also note that Stewart did not contest the postconviction court's conclusion that he forfeited the arguments—he has, therefore, conceded that the additional reasons have been forfeited. *See* *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (an appellant's failure to refute the grounds of a circuit court's ruling is a concession of the validity of those grounds).

We also conclude that Stewart conceded his argument regarding other fair and just reasons to withdraw his plea by failing to file a reply brief and refute the State's position. *See* *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).

court is best suited to consider the relevant factors and demeanor of the convicted defendant." *Id.* (citations omitted). The "sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." *Id.*, ¶23 (citation omitted).

¶41 To properly exercise its discretion, a circuit court must provide a rational and explainable basis for the sentence. *Id.*, ¶22. It must "specify the objectives of the sentence on the record. These objectives include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *Id.*, ¶40. However, "[h]ow much explanation is necessary, of course, will vary from case to case." *Id.*, ¶39.

¶42 The circuit court must identify the general objectives of greatest importance, which may vary from case to case. *Id.*, ¶41. It must also describe the facts relevant to the sentencing objectives and explain, in light of the facts, "why the particular component parts of the sentence imposed advance the specified objectives." *Id.*, ¶42. Similarly, it "must also identify the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision." *Id.*, ¶43. In *Gallion*, our supreme court explained, "[i]n short, we require that the court, by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion." *Id.*, ¶46. The court further stated that "[w]e are mindful that the exercise of discretion does not lend itself to mathematical precision. The exercise of discretion, by its very nature, is not amenable to such a task." *Id.*, ¶49.

19

¶43     In *State v. Stenzel*, 2004 WI App 181, ¶9, 276 Wis. 2d 224, 688 N.W.2d 20, this court explained that "[w]hile *Gallion* revitalizes sentencing jurisprudence, it does not make any momentous changes.  The weight to be given each factor is still a determination particularly within the wide discretion of the sentencing judge."  It further stated that "when we review a sentence, we still look to the entire record, including any postconviction proceedings and to the totality of the court's remarks."  *Id.*

### B.  Stewart failed to show that the circuit court erroneously exercised its discretion in imposing sentence

¶44     We first address the issue of whether Stewart preserved his argument for appeal.  As the postconviction court noted, in his motion, postconviction counsel set forth, in a little over one page, a "list of prerequisites in order to render a valid sentence."  At the end of the list, he stated, "[d]ue to space limitations, [Stewart] asserts that the [circuit] court did none of these things at the sentencing hearing."  The postconviction court then stated that the local rule limiting the length of postconviction motions is no excuse for failing to develop a postconviction argument.[11]

¶45     We conclude that Stewart did not preserve any argument that the circuit court erroneously exercised its discretion in imposing his sentence because he did not adequately plead his motion.  As noted above, after listing the prerequisites for sentencing, postconviction counsel merely "asserts that the [circuit] court did none of these things at the sentencing hearing."  This is only a

---

[11] The postconviction court noted that counsel devoted over fourteen pages to a detailed discussion of the procedural history of the case.  It stated that counsel could have abbreviated that discussion in order to accommodate an analysis of his sentencing or he could have petitioned the court under Local Rule 4.17B to permit the filing of a motion or brief exceeding the page limit.

conclusory allegation without any analysis of what the court said during sentencing. If allegations are conclusory, a defendant is not entitled to relief. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Thus, we conclude that Stewart has not sufficiently pled his claim.

¶46 Further, we conclude that Stewart conceded the State's argument that the circuit court reasonably exercised its discretion when it imposed Stewart's sentence. In its response brief, the State cited to the sentencing transcript and argued that the circuit court addressed the relevant sentencing factors, including the gravity of the offense, Stewart's background and character, and the need to protect the public. Responding to Stewart's argument in his opening brief that the circuit court did not consider probation as the first alternative as a sentence and that the "term 'probation' was not uttered once during the entire sentencing proceeding," the State argued that in *Gallion*, our supreme court stated that "[t]he [sentencing] explanation is not intended to be a semantic trap for circuit courts. It is also not intended to be a call for more 'magic words.'"[12] It then argued that the circuit court's explanation about the seriousness of the offense and the need to protect the public was sufficient to demonstrate that probation would, in this case, in the words of *Gallion*, "unduly depreciate the seriousness of the offense." *See id.*, 270 Wis. 2d 535, ¶44.

¶47 Stewart did not file a reply brief, and therefore, he did not refute the State's argument on this issue. Thus, we conclude that Stewart conceded the State's argument that the circuit court properly exercised its discretion in

---

[12] The State was citing to *State v. Gallion*, 2004 WI 42, ¶49, 270 Wis. 2d 535, 678 N.W.2d 197.

sentencing Stewart. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that where an appellant fails to dispute the respondent's argument by failing to file a reply brief the appellant concedes the respondent's argument); *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that failure to refute a proposition asserted in a response brief may be taken as a concession).

## CONCLUSION

¶48    For the reasons stated above, we conclude that Stewart did not meet his burden to prove that he had a fair and just reason to withdraw his plea before sentencing. We also conclude that he failed to sufficiently plead his claim that the circuit court erroneously exercised its discretion in sentencing him. Further, we conclude that by failing to file a reply brief, Stewart conceded the State's argument that the circuit court properly exercised its discretion in sentencing Stewart.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.