COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP2161-CR**

Cir. Ct. No. 2021CF1186

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JEREMY JAMON PIERSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE A. HAVAS, Judge. *Affirmed.*

Before White, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Jeremy Jamon Pierson appeals from his judgment of conviction and the order denying his postconviction motion.  We affirm.

## BACKGROUND

¶2     Pierson was charged with battering his live-in girlfriend, T.D.D., on February 13, 2021, and again on March 24, 2021.[1]  He pled guilty to substantial battery with intent to cause bodily harm for the February 13th incident and to aggravated battery for the March 24th incident, both counts with domestic abuse assessments.  The probable cause section of the complaint served as the factual basis for Pierson's pleas.

¶3     Regarding the February 13th incident, the complaint alleged:

> On February 14, 2021 [T.D.D.] showed [her mother] all of the injuries that she had sustained from PIERSON including a bite mark on [T.D.D.'s] left leg, a significant burn mark from a cigarette on her right upper leg, other burns and bruises on her arms and legs, blood and swelling to her left eye.  [T.D.D.'s mother] reported that [T.D.D.] was afraid that PIERSON would kill her or her children if she called the police.  [T.D.D.'s mother] reported that she was helping [T.D.D.] stay in a hotel and secretly look for an apartment so she could move out and be away from PIERSON.  [T.D.D.'s mother] reported that PIERSON always has a gun and has left it unsecured inside the residence with the young children.

¶4     Regarding the March 24th incident, the complaint alleged:

> Milwaukee Fire was dispatched to [a residence] for the victim, identified as T.D.D. …, [who] had asthma and was having trouble breathing.  While on scene the defendant,

---

[1]  Pursuant to WIS. STAT. RULE 809.86(4) and consistent with the parties' briefing to this court, we refer to the victim by the initials used in the complaint.

All references to the Wisconsin statutes are to the 2023-24 version.

> identified as JEREMY PIERSON … demanded to know who was inside the medical ambulance and was very aggressive. Milwaukee Fire Department had to change locations … to avoid PIERSON…. As MFD was treating T.D.D. in the ambulance, PIERSON came back to the ambulance and again demanded to know who was in the ambulance and what unit they came from….
>
> [An] MFD Lieutenant … observed T.D.D. to have several bruises consistent with abuse and T.D.D.'s condition began to rapidly decrease….
>
> While en route to [the] hospital, T.D.D. became unconscious and pulseless…. T.D.D. was treated for a broken nose, bruised face, blood around the lungs, blood around the kidneys, a ruptured kidney and internal bleeding in the abdomen, cigarette burns to the left arm and left thigh, multiple bruises, a contusion to her left eye and [a] contusion to her left upper should[er] "the size of a fist." While being treated T.D.D. became unconscious and pulseless two more times resulting in her having to be intubated and put into a medical coma.

When interviewed by the police, the oldest child in the home alleged that Pierson and T.D.D. were fighting when he went to bed on March 23rd. The next morning, the child observed that T.D.D. had injuries, was dizzy, could not breathe, and was vomiting.

¶5 Prior to trial, Pierson moved to exclude the testimony of the State's expert witness regarding the cycle of violence often found in abusive domestic relationships. The circuit court held an evidentiary hearing on the motion at which the expert testified. The court then denied the motion, ruling that the expert's testimony was admissible under WIS. STAT. § 907.02.

¶6 Pierson subsequently pled guilty to the crimes as stated above. In exchange for Pierson's guilty pleas, the State agreed to dismiss a stalking charge outright and to dismiss and read in a misdemeanor battery charge. The parties were free to argue about the length and manner of an appropriate sentence at

3

sentencing. The court imposed consecutive sentences totaling eleven and one-half years of initial confinement followed by five years of extended supervision.

¶7 Pierson filed a postconviction motion seeking to vacate the judgment of conviction or modify his sentence. He argued that the circuit court erred when it denied his motion to exclude the testimony of the State's expert witness. He also argued that the court erroneously exercised its sentencing discretion because his sentences were too harsh and the court gave insufficient weight to his rehabilitative needs.

¶8 The circuit court denied Pierson's motion. In doing so, the court explained that it stood by its ruling admitting the testimony of the State's expert. In addition, the court held that by pleading guilty, Pierson waived his right to challenge that ruling. Next, the court rejected Pierson's sentencing challenge, explaining that it appropriately considered the relevant sentencing factors and gave significant weight to the heinous nature of his crimes, which did not warrant the possibility of early release. This appeal follows.

**DISCUSSION**

¶9 Pierson renews his postconviction claims. This court reviews de novo whether a guilty plea waived the right to appellate review of an issue raised at the trial level. *State v. Kelty*, 2006 WI 101, ¶¶13, 18 & n.11, 294 Wis. 2d 62, 716 N.W.2d 886 (discussing the guilty plea waiver rule that "a guilty, no contest, or *Alford* plea" forfeits or "'waives all nonjurisdictional defects, including constitutional claims'" (citation and footnote omitted)); *see also State v. Coffee*, 2020 WI 1, ¶17, 389 Wis. 2d 627, 937 N.W.2d 579 (stating that whether a defendant adequately preserved or forfeited his right to appellate review of a particular claim is reviewed de novo).

4

¶10 In contrast, our review of a sentence is limited to whether the circuit court erroneously exercised its discretion. *State v. Harris*, 2010 WI 79, ¶3, 326 Wis. 2d 685, 786 N.W.2d 409. "When the exercise of discretion has been demonstrated, we follow a consistent and strong policy against interference with the discretion of the [circuit] court in passing sentence[.]" *State v. Stenzel*, 2004 WI App 181, ¶7, 276 Wis. 2d 224, 688 N.W.2d 20.

¶11 Pierson continues to argue that the circuit court erred when it denied his motion to exclude the testimony of the State's expert witness. He contends that this claim is not subject to the guilty plea waiver rule, which provides that a voluntary and intelligent guilty plea waives all nonjurisdictional defects and defenses, including alleged constitutional violations. *See Kelty*, 294 Wis. 2d 62, ¶18. Pierson reads *Kelty* too narrowly when he suggests that its holding is limited to fact-finding hearings on multiplicity claims and double jeopardy, which were at issue in that case. The guilty plea waiver rule is not so limited.

¶12 While there is an exception to the guilty plea waiver rule that allows a defendant to appeal an order denying a motion to suppress, *see* WIS. STAT. § 971.31(10), that exception does not apply to an evidentiary challenge that seeks to exclude evidence, not suppress it, *see State v. Eichman*, 155 Wis. 2d 552, 562-63, 456 N.W.2d 143 (1990) (recognizing the distinction between excluding evidence due to an evidentiary rule violation and suppressing it due to a constitutional violation); *see also State v. Nelson*, 108 Wis. 2d 698, 702, 324 N.W.2d 292 (Ct. App. 1982) (noting that § 971.31(10) "cannot be construed so as to except from the rule of waiver every motion to exclude evidence"). By virtue of his guilty pleas, Pierson waived his right to challenge the circuit court's pretrial evidentiary ruling against him.

¶13 Next, Pierson argues that the circuit court erroneously exercised its sentencing discretion in the following ways: by making his sentences too harsh; by failing to adequately consider his rehabilitative needs; and by failing to make him eligible for the substance abuse program.

¶14 The primary factors the court must consider when exercising its sentencing discretion are "the gravity of the offense, the character of the [offender], and the need to protect the public." *Harris*, 326 Wis. 2d 685, ¶28. The court may consider a variety of other factors as well, including the defendant's criminal history, his or her personality and social traits, the results of a presentence investigation, the aggravated nature of the crime, the defendant's culpability, his or her age and education, his or her remorse or lack thereof, his or her cooperation, his or her need for close rehabilitative control, and the rights of the public. *Id.*

¶15 A sentence is unduly harsh or excessive "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *See Stenzel*, 276 Wis. 2d 224, ¶21 (citation omitted). Here, in terms of harshness, Pierson contends:

> In this case, Mr. Pierson is a first-time offender. He committed bad acts while drinking heavily. To incarcerate a first-time offender in the Wisconsin prison system for [eleven and one-half] years, where there are no programs for helping him improve himself, no classes, often no books, and nothing there to help him, is unduly harsh. Then to give him another five years of probation is also unduly harsh. The [c]ourt should have ordered a lesser number of years, closer to the number the [Department of Corrections] recommended, and should have ordered the sentences served concurrently rather than consecutively.

(Record citations omitted.)

¶16    In its sentencing remarks, the circuit court accounted for the fact that Pierson did not have a prior record and did well on supervision while out on bail. The court also accounted for the fact that, by pleading guilty, Pierson "did not force this to trial and force [T.D.D.] to re-live this." The court then discussed the gravity of these offenses, noting that they were separate crimes because "they were fully separate decisions" that "occurred a month and a half apart." The court determined that the substantial battery in February was "extremely serious." Next, the court observed that T.D.D. could have died after the second incident in March if not for some fortuitous circumstances.

¶17    The circuit court explained that this case "is not appropriate for probation."[2] The court additionally noted that the lenient recommendation by the author of the presentence investigation report was "inadequate to appropriately protect the community from [Pierson]." The court went on to explain that the community needs protection from someone who abuses an intimate partner they claim to love and that Pierson needed to be punished.

¶18    The circuit court did not make Pierson eligible for the substance abuse program because Pierson had indicated that he was sober and that alcohol was "not a problem for him anymore."[3] The court concluded its remarks as follows: "And in addition to that, I find that this crime is so heinous that it does

---

[2] At sentencing, Pierson sought "a long term of probation[.]" As a condition of that probation, Pierson said he would serve twelve months in jail.

[3] During his remarks, Pierson suggested that his drinking was the reason for his behavior, informing the court that he "went down a rabbit hole of drinking heavily." He subsequently stated that he had been sober for the two and one-half years preceding the sentencing hearing while released on bail.

not warrant the possibility of early release. That it is going to be necessary for you to serve all of the time that I'm about to give you."

¶19 Against this backdrop, Pierson's contentions that the circuit court erred by failing to adequately consider his rehabilitative needs—namely his need for anger management classes and substance abuse programming—fall short. There was no need to make Pierson eligible for the substance abuse program because, as the court explained, Pierson claimed to be sober and apparently had been for over two years. Moreover, according to the court, the gravity of the offense and the need to punish Pierson for his crimes outweighed whatever his rehabilitative needs might be.

¶20 In sum, the circuit court did not weigh the sentencing factors as Pierson would have preferred, but that is not an erroneous exercise of discretion. *See **State v. Odom***, 2006 WI App 145, ¶8, 294 Wis. 2d 844, 720 N.W.2d 695 (explaining that our inquiry is whether the circuit court exercised discretion, not whether discretion might be exercised differently).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.